WASHINGTON VISTA HOTEL,
et al., Petitioners,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.

Hossein Zahedi, Intervenor.

No. 97–AA–207.

District of Columbia Court of Appeals.

Argued Jan. 6, 1998.
Decided Dec. 3, 1998.

Michael S. Levin, Columbia, MD, for petitioners.

George E. Swegman, Washington, DC, for intervenor.

Jo Anne Robinson, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before TERRY, STEADMAN, and REID, Associate Judges.

TERRY, Associate Judge:

The Washington Vista Hotel ("Vista") and its insurance carrier seek review of a decision by the District of Columbia Department of Employment Services ("DOES") awarding workers' compensation benefits to Hossein Zahedi, one of Vista's employees. Mr. Zahedi claimed that he was unable to perform his job after sustaining an injury at work. Vista voluntarily paid him workers' compensation benefits from April 25 through August 7, 1991, but he sought additional benefits from August 8, 1991, to the present and continuing. After a hearing on his claim, a DOES hearing examiner found that any work-related injury which Mr. Zahedi might have suffered had resolved by July 18, 1991. The examiner therefore issued a compensation order denying Mr. Zahedi's request for additional benefits beyond that date.

Mr. Zahedi appealed to the Director of DOES, asserting that the finding that any work-related disability had resolved by July 18, 1991, was not supported by substantial evidence, and that the hearing examiner had erroneously failed to consider aggravation of a pre-existing injury. The Director reversed the examiner's order and granted Mr. Zahedi temporary total disability benefits from August 8, 1991, to the present and continuing, as well as all related medical expenses. Vista and its insurance carrier seek review of the Director's decision. We hold that the Director erred when she rejected the hearing examiner's factual findings and credibility determinations and ruled that the examiner's decision was not based on substantial evidence. We therefore reverse the Director's decision and remand this case to DOES with directions to reinstate the original compensation order.

I

Mr. Zahedi began working for Vista as a banquet waiter in 1984. His duties included setting tables, serving meals, and cleaning up after breakfast, lunch, and dinner banquets. The physical requirements of the job included lifting and carrying heavy trays and climbing stairs.

On April 25, 1991, while at work, Mr. Zahedi slipped on a wet floor and fell backwards. Although co-workers caught him before he hit the floor, he complained of dizziness and pain in his neck and back. His brother, who also worked at the hotel, took Mr. Zahedi to the emergency room at George Washington University Hospital, where doctors examined him and took x-rays of his spine. The x-rays were negative, and the hospital sent him home the same day. Thus began a series of visits to numerous doctors in an apparently fruitless effort to seek relief from neck and back pain. Mr. Zahedi never returned to work at Vista.

The day after his fall, Mr. Zahedi went to Dr. Tamberlain Connelly, a chiropractor, complaining of pain in his neck and back and a headache.[1] Dr. Connelly referred him to

1. Dr. Connelly had previously been treating Mr. Zahedi for back pain. Later in the hearing,

Dr. Kenneth W. Eckmann, a neurologist with the Neurology Center. Dr. Eckmann performed both a magnetic resonance imaging (MRI) examination and a nerve conduction test. The MRI revealed some disc disease, but it also showed a normal spinal cord and craniocervical junction and no significant soft tissue abnormalities. The nerve conduction study indicated normal nerve responses and no muscular denervation or reinnervation.

Because Dr. Eckmann was unable to find a physical cause for the type of pain of which Mr. Zahedi complained, Dr. Connelly suggested that Mr. Zahedi consult Dr. Kent A. Peterson, an orthopedic surgeon.[2] At Dr. Connelly's request, Dr. Peterson examined Mr. Zahedi on May 24, 1991, placed him in a soft cervical collar, and advised him to begin physical therapy. Mr. Zahedi returned to Dr. Peterson three weeks later, on June 14, complaining of dizziness after his most recent physical therapy session, pain on the left side of his head, and fatigue. Dr. Peterson then diagnosed him as suffering from a herniated cervical disk and instructed him to discontinue physical therapy.

In July 1991 Vista's insurance company requested that Dr. Robert E. Collins, an orthopedic surgeon, examine Mr. Zahedi in order to determine whether he was physically able to return to work. After examining him and administering some tests, Dr. Collins concluded that Mr. Zahedi had "minimal degenerative arthritis of the neck with back and neck pain out of proportion to any physical findings."[3] Dr. Collins opined that during his examination Mr. Zahedi had purposely limited his range of motion and had not fully participated in the strength tests, and observed that Zahedi was "now over three months post-injury of a relatively minor strain in which he did not even fall. . . ."

Because Dr. Collins could not find a medical reason for Mr. Zahedi's continued pain, he recommended that Zahedi immediately return to work with a temporary twenty-pound lifting restriction.

On August 8, 1991, Vista sent Mr. Zahedi a letter notifying him that Dr. Collins' report indicated he was able to return to work, and that he would therefore be scheduled for banquet functions as of August 17. When Mr. Zahedi failed to respond, Vista sent him two more letters on September 4 and 16. After receiving no response to either of those letters, Vista terminated his employment.[4] However, in December 1991 Vista offered to rehire him with the twenty-pound lifting restriction, and again in February 1992 Vista said it was still willing to employ him as a banquet waiter.

Meanwhile, Mr. Zahedi continued on his odyssey seeking a diagnosis and treatment for his neck and back pain. Dr. Peterson referred him to Dr. John W. Barrett, a neurologist, who examined him on October 28, 1991. Dr. Barrett noted that Mr. Zahedi complained of almost constant headaches and neck pain which occasionally radiated into his upper extremities. Dr. Barrett conducted his own examination and concluded that Mr. Zahedi had hyperextended his spine when he fell in April 1991, causing an injury that was "superimposed upon some pre-existing cervical spinal problems which were, for the most part, asymptomatic at the time of this injury on 25 April 1991." He recommended that Mr. Zahedi continue conservative treatment and undergo an evaluation by a physiatrist. Although Dr. Barrett surmised that a pre-existing spinal problem might have exaggerated the pain from the hyperextension, he expressed no opinion on whether Mr.

Zahedi testified that before his fall in April 1991, he had injured his back and neck on two other occasions while working at Vista. Although he went to Drs. Connelly and Peterson for treatment, he did not miss any time from work and never filed a workers' compensation claim based on either of those injuries.

2. Mr. Zahedi testified that he "used to see Dr. Peterson because of [his] previous injury at the Vista for [his] back and [his] neck," but he gave no further details about that "previous injury."

3. Dr. Collins noted that Mr. Zahedi told him that he had sustained a previous injury to his neck and lower back three to four years before his fall in April 1991, but he made no finding as to whether the more recent fall had aggravated that previous injury.

4. Mr. Zahedi testified that he eventually contacted his superiors at Vista and informed them that his doctors had not released him to return to work. Vista asserted, however, that he never responded to any of their letters.

Zahedi's April 1991 fall had aggravated such a pre-existing problem.

Dr. Barrett referred Mr. Zahedi to Dr. Andrew V. Panagos, a specialist in physical medicine and rehabilitation. After examining Mr. Zahedi on November 15, 1991, and finding "guarding of motion" and "no acute distress," Dr. Panagos concluded that "his pain complaints appear to be greatly out of proportion to the amount of pathology present." Nevertheless, Dr. Panagos made a last-ditch effort to treat any existing acute injury and placed Mr. Zahedi on Prednisone, an anti-inflammatory drug. When Mr. Zahedi showed no improvement after the ten-day course of Prednisone and Dr. Panagos was still unable to find a physical cause for his complaints, Dr. Panagos resorted to simply treating Mr. Zahedi's chronic pain and prescribed Pamelor, a pain medication. After four additional visits extending into March 1992, Dr. Panagos noted that, despite increased dosages of pain medication and more aggressive treatment, including acupuncture, Mr. Zahedi still reported no change in his feelings of pain.

Mr. Zahedi's testimony basically corroborated the depositions and reports of the doctors who had treated him. He testified that he had found very little relief in any medical treatment and still had pain in his feet, left shoulder, hand, and behind his left eye, and that he could not comfortably move his neck. He did not believe he could perform the lifting and serving duties of a banquet waiter, even with a twenty-pound lifting restriction. According to Mr. Zahedi, none of his physicians suggested that he return to work.

The record also contains several notes from Mr. Zahedi's treating physicians excusing him from work-related activities. Each of these notes is just one or two sentences long, addressed "To Whom It May Concern,"

and none of them states a reason for Mr. Zahedi's inability to return to work.[5]

In the compensation order, the hearing examiner weighed the medical records provided by Drs. Connelly and Peterson against the opinion and recommendation of Dr. Collins, as set forth in his report of July 25, 1991, and his subsequent deposition. She found Dr. Collins' opinion to be "well-reasoned and cogent," but found the opinions of the other two doctors to be "vague and devoid of substantiating information regarding claimant's ability to perform his job duties."[6] She noted that both of their reports were "form letters addressed 'To Whom It May Concern' stating that claimant was unable to work" and that Dr. Peterson's diagnosis that Mr. Zahedi had a herniated disc "did not reference an inability to work and did not state the cause of claimant's herniated disc." The examiner also rejected the evaluations of Dr. Eckmann and Dr. Panagos because neither of them had expressed an opinion as to whether Mr. Zahedi was able to return to work. Finally, the examiner found Dr. Barrett's opinion to be "not persuasive [because] he did not know that claimant had received treatment for neck and back complaints as late as two months prior to the injury in question."

On appeal, the Director, finding that "virtually all the evidence, including the employer's, points to some disability," and applying the presumption that a present disability is causally related to a work injury, reversed the examiner's order on the ground that it was not supported by substantial evidence.

## II

█ Before this court Vista makes only one contention: that the Director exceeded her permissible scope of review in overturning the examiner's finding that any injury

5. Specifically, the record contains notes (1) from Dr. Peterson dated May 24 and September 23, 1991; (2) from Dr. Connelly dated June 8, June 15, September 1, October 1, and December 31, 1991, and March 1, 1992; and (3) from Dr. Panagos dated November 29 and December 24, 1991, and March 16, 1992.

6. Mindful of Dr. Collins' conclusion that any injury Mr. Zahedi might have sustained in the

April 1991 fall had healed and, at the same time, his recommendation that Mr. Zahedi be restricted to lifting twenty pounds, the examiner inferred that the restriction was based on his degenerative condition, not on any injury attributable to the April 1991 fall. The Director found that this inference was unreasonable because "there is no direct evidence of record to support such a finding."

from which Mr. Zahedi suffered after July 18, 1991, did not arise out of and in the course of his employment.

■ The standards governing the Director's review of a hearing examiner's decision are well established. The Director may not consider the evidence *de novo* and make factual findings different from those of the examiner; rather, she may reverse the examiner's decision only when it is not supported by substantial evidence. *E.g., King v. District of Columbia Department of Employment Services,* 560 A.2d 1067, 1072 (D.C. 1989); *Dell v. Department of Employment Services,* 499 A.2d 102, 107 (D.C.1985). The Director is bound by the examiner's findings "even though the [Director] may have reached a contrary result based on an independent review of the record." *Id.* at 108. Moreover, "[a] hearing examiner's decisions are especially weighty when they involve credibility determinations." *George Hyman Construction Co. v. District of Columbia Department of Employment Services,* 498 A.2d 563, 566 (D.C.1985) (citation omitted); *accord, e.g., Charles P. Young Co. v. District of Columbia Department of Employment Services,* 681 A.2d 451, 457 (D.C.1996).

■ In this case there was substantial evidence in the record to support the hearing examiner's finding that Mr. Zahedi no longer suffered from a work-related injury as of July 18, 1991. The examiner had before her the physicians' reports and the deposition testimony of Drs. Collins, Panagos, and Barrett. Considering all the evidence, she found Dr. Collins to be most credible, and there was no reason for the Director to reject or ignore that credibility finding. Dr. Collins concluded, after a complete examination of Mr. Zahedi, that any injury he might have suffered on April 25, 1991, had completely healed by July 18, 1991. In addition, Mr. Zahedi's own physicians supported Dr. Collins' conclusion. Even as early as May 1991, Dr. Eckmann, reviewing the MRI and the nerve conduction tests, was unable to find

any physical injury attributable to Mr. Zahedi's fall. Dr. Barrett concluded that Mr. Zahedi had hyperextended his neck during the fall but, in October 1991, recommended that he undergo a psychiatric evaluation because he was still experiencing pain, even though the pain was "greatly out of proportion to the amount of pathology present." When Mr. Zahedi did not respond to anti-inflammatory medication, Dr. Panagos concluded that he suffered from chronic unattributable pain rather than a specific injury. In short, there was more than sufficient support for the hearing examiner's finding that Mr. Zahedi's April injury had resolved by July 18.[7]

■ The Director also erred in concluding that the hearing examiner had improperly failed to apply the aggravation rule. Under that rule, "[t]he aggravation of a pre-existing condition may justify compensation." *Baker v. District of Columbia Department of Employment Services,* 611 A.2d 548, 550 (D.C.1992) (citation omitted); *see Whittaker v. District of Columbia Department of Employment Services,* 668 A.2d 844, 845 (D.C. 1995). But it is not enough simply to prove a pre-existing condition. Both *Baker* and *Whittaker* make clear that there must be at least some evidence of aggravation before the rule may be invoked. In *Baker* the claimant's treating physician "opined that the [work-related] injury aggravated a 'previously diagnosed condition of cervical disc syndrome with lumbar disc sprain.'" 611 A.2d at 549. In *Whittaker* the treating physician testified "that the torn cartilage in [the claimant's] right knee, conceded to have been caused by the work-related fall, had aggravated a pre-existing arthritic condition in his knee." 668 A.2d at 846. There was no comparable evidence presented in this case.

Because Mr. Zahedi raised this issue for the first time in his appeal to the Director, the record before the examiner contained no evidence that his fall had aggravated a pre-existing condition. Although there was some

---

7. Given Dr. Collins' conclusion that in July Mr. Zahedi no longer suffered from any injury incurred in April, it was reasonable for the hearing examiner to infer that Dr. Collins' recommendation of a temporary twenty-pound restriction on

lifting was not based on a work-related injury. "The trier of fact is entitled to draw reasonable inferences from the evidence presented." *George Hyman Construction Co., supra,* 498 A.2d at 566.

evidence that Mr. Zahedi had been treated for back and neck pain before he slipped and fell on April 25 and that he might have suffered from a pre-existing degenerative disorder (Dr. Collins found "minimal degenerative arthritis of the neck"), not one single doctor expressed an opinion that his fall in April had aggravated any such pre-existing condition.[8] Because there was no evidence of aggravation, and hence no finding that an aggravation had (or had not) occurred, the record does not support the Director's ruling that the examiner should have applied the aggravation rule.

 There is a statutory presumption that a claim is compensable if the claimant proves both a work-related injury and an ensuing disability. D.C.Code § 36–321(1) (1997); see *Sturgis v. District of Columbia Department of Employment Services*, 629 A.2d 547, 554 (D.C.1993). The presumption "operates to establish a causal connection between the disability and the work-related event." *Baker*, 611 A.2d at 550 (citation omitted). This court in *Ferreira v. District of Columbia Department of Employment Services*, 531 A.2d 651, 660 (D.C.1987), took note of the aggravation rule in remanding the case to enable the employer to rebut the presumption of compensability. We did not say, however, in *Ferreira* or in any other case, that the presumption was sufficient, by itself, to establish aggravation of a pre-existing condition. At most, *Ferreira* can be read as holding that once aggravation is proved (as it was in *Baker* and *Whittaker*, but was not in the instant case), the presumption may be applied to establish a causal connection between the work-related event and any present disability resulting from the aggravation.

We therefore conclude that the examiner's findings were supported by substantial evidence. We hold that the examiner permissibly relied on Dr. Collins' opinion, which she was free to credit over contrary expert opinion, and that the Director erred in rejecting the examiner's findings. Accordingly, we re-verse the Director's decision and direct DOES on remand to reinstate the original compensation order issued by the hearing examiner.

*Reversed and remanded.*

---

**8.** Dr. Peterson testified that the existence of the degenerative condition might have caused Mr. Zahedi to suffer more distress after his fall, but he never said that the fall aggravated the degenerative condition. Dr. Barrett found that Mr. Zahedi's injury in April was "superimposed upon some pre-existing spinal problems," but he did not say that the fall had aggravated those "problems," whatever they were.