**MARRIOTT INTERNATIONAL,**
Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.**

No. 02–AA–1396.

District of Columbia Court of Appeals.

Submitted Sept. 9, 2003.

Decided Oct. 30, 2003.

Jeffrey W. Ochsman and Alan D. Sundburg, Washington, DC, were on the brief for petitioner.

Arabella W. Teal, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, at the time the brief was filed, and William J. Earl, Assistant Corporation Counsel, filed a statement in lieu of brief for respondent.

Before RUIZ and REID, Associate Judges, and BELSON, Senior Judge.

RUIZ, Associate Judge:

Petitioner asks us to review a decision by the director of the District of Columbia Department of Employment Services. The proceedings below arose from a claim for workers' compensation benefits filed by Dwayne Leigh against Marriott International under the District of Columbia Workers' Compensation Act of 1979, D.C.Code §§ 32–1501 *et seq.* (2001). Following a formal hearing, the Administrative Law Judge declined to award benefits for continuing medical care, finding that Mr. Leigh's current medical condition is not causally connected to his work-related injury. On review, the director found that the ALJ's order was not supported by substantial evidence, reversed the ALJ's order denying benefits, and awarded benefits for continuing medical care. Marriott then sought our review pursuant to D.C.Code § 32–1522(b)(3) (2001). Because we agree with petitioner that the director exceeded his permissible scope of review, we reverse and remand.

I.

A. *Factual Background*

Marriott International hired Dwayne Leigh in October of 2000 as a loss preven-

tion and security officer, which required him to patrol the hallways of a Marriott hotel. In the course of his rounds, Mr. Leigh also distributed "folios," which contained bills for hotel services. This activity required Mr. Leigh to bend forward repeatedly to slip the folios under guest room doors.

On August 2, 2001, Mr. Leigh sustained injuries to his neck and lower back in an automobile accident unrelated to his employment with Marriott. These injuries prompted Mr. Leigh to seek the care of Dr. Roy Rosenthal, an orthopaedic physician, who advised Mr. Leigh to refrain from working until October 25, 2001. Thereafter, Mr. Leigh was free to return to "light duty" work that did not involve repetitive stooping or bending. Marriott accommodated Mr. Leigh's light duty needs by allowing him to return to sedentary activities. Shortly thereafter, however, Mr. Leigh resumed his regular duties, including patrolling the hallways and delivering folios.

On December 15, 2001, while bending forward to slip a folio under a guest room door, Mr. Leigh felt a sudden, severe recurrence of lower back pain similar in kind to the pain experienced after the automobile accident. As a result, Mr. Leigh sought the care of Dr. Rosenthal, who gave him a disability slip indicating that he could return to work without restriction on March 11, 2002. Mr. Leigh in fact returned to work on March 13, 2002. During consultations on April 15 and 23, Dr. Rosenthal continued to permit Mr. Leigh to perform his regular work duties, but indicated that magnetic resonance imaging (MRI) should be performed in order to help assess Mr. Leigh's continuing complaints of back pain. Mr. Leigh again met with Dr. Rosenthal on June 4, 2002, at which time Dr. Rosenthal recommended a period of "work hardening." It is unclear if any such program was undertaken.

On April 29, 2002, and at Marriott's request, Mr. Leigh was examined by Dr. David Johnson for purposes of an independent medical evaluation. After performing his own physical examination of Mr. Leigh, Dr. Johnson determined that the work incident of December 15 caused a temporary aggravation of the prior back injury. However, Dr. Johnson also determined that the aggravation already had resolved itself, and that Mr. Leigh's current symptoms "are more likely derived from the original non-work-related injury of 8/01 [the automobile accident] rather than the [work-related] incident of 12/15/01." Dr. Johnson later confirmed this conclusion in a report dated June 1, 2002, after having reviewed the full medical file from Dr. Rosenthal. Dr. Johnson did concur, however, with Dr. Rosenthal's recommendation for an MRI, and opined that Mr. Leigh should not return to full-duty work until the procedure was performed. The MRI was never done.

B. *The Proceedings Below*

Mr. Leigh filed an application with the Department of Employment Services in February of 2002, claiming (1) total disability benefits for the period of December 16, 2001 through March 13, 2002, (2) causally related medical expenses, and (3) authorization for continuing treatment, including an MRI, as recommended by Dr. Rosenthal. Following a formal hearing on the matter, an ALJ issued a compensation order concluding that Mr. Leigh had been accidentally injured in the course of his employment on December 15, 2001 and that he was totally disabled for the period claimed. The ALJ also concluded that Mr. Leigh's current back injury is unrelated to the work incident. This latter conclusion was based on a finding that the temporary exacerbation of Mr. Leigh's condition at-

tributable to the December 15 work-related incident "had resolved [itself] by the date of the [independent medical evaluation] at the latest." Accordingly, the ALJ entered an order awarding Mr. Leigh total disability benefits for the period running from December 16, 2001 through March 13, 2002, but denying as causally unrelated the claim for further care as recommended by Dr. Rosenthal.

On review, the director of the Department of Employment Services partly reversed the compensation order, concluding that "the [ALJ's] finding that Claimant's current back condition is unrelated to his work injury and there is no need for further medical care and treatment is not supported by substantial evidence." The director based his decision on several facts taken from his own review of the record, specifically: (1) Dr. Rosenthal first mentioned the need for an MRI on April 15, 2002, and has consistently reiterated the request since then; (2) even Dr. Johnson supported the recommended MRI in his April 29 report; (3) Dr. Johnson opined that Mr. Leigh should not return to full-duty work until he had an MRI; (4) Dr. Rosenthal felt Mr. Leigh needed a work hardening program before returning to work; and (5) the record indicates that both physicians opined that an MRI was necessary and that Mr. Leigh was not able to return to regular work. Marriott now appeals the director's decision.

## II.

### A. *Standards of Review*

■ Marriott argues that the director exceeded his permissible scope of review and that the decision is unsupported by substantial evidence. In reviewing an agency decision, we are guided by several well-established principles. An agency decision stands undisturbed unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* D.C.Code § 2–510(a)(3) (2001); *Clark v. District of Columbia Dep't of Employment Servs.*, 772 A.2d 198, 201 (D.C.2001). In workers' compensation cases, we defer to the decision of the agency director provided that the decision flows rationally from facts supported by substantial evidence in the record. *See Clark*, 772 A.2d at 201 (citation omitted); *see generally Children's Defense Fund v. District of Columbia Dep't of Employment Servs.*, 726 A.2d 1242, 1247 (D.C.1999) (defining "substantial evidence" as relevant evidence that a reasonable mind might accept as adequate to support a conclusion). Thus, our standard of review mirrors that which the director is bound to apply. *See Canlas v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 1210, 1211 (D.C. 1999). We have stated that the director may not consider the evidence *de novo* and make factual findings different from those of the examiner. *See id.* (quoting *Washington Vista Hotel v. District of Columbia Dep't of Employment Servs.*, 721 A.2d 574, 578 (D.C.1998)). Indeed, the director is bound by the hearing examiner's findings of fact even though the director may have reached a contrary result based on an independent review of the record. *See id.* If substantial evidence exists to support the hearing examiner's findings, the existence of substantial evidence to the contrary does not permit the director to substitute his judgment for that of the examiner. *Cf. Gary v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 1205, 1209 (D.C.1998) (stating that this court is bound to the director's decision even in the face of substantial evidence to the contrary) (citing *McEvily v. District of Columbia Dep't of Employment Servs.*, 500 A.2d 1022, 1024 n. 3 (D.C.1985)). Rather, the director may reverse a hearing examiner's order only

when it is unsupported by substantial evidence, *Canlas,* 723 A.2d at 1211, or is otherwise legally incorrect. With these principles in mind, we turn to the arguments.

### B. *Analysis*

To determine whether the director exceeded his permissible scope of review, we begin with an examination of the ALJ's compensation order. The ALJ had before him the reports of Drs. Rosenthal and Johnson. Whereas Dr. Rosenthal's report might be interpreted to support a finding of a causal connection between Mr. Leigh's current injury and the December 15 work-related incident, Dr. Johnson's report explicitly states that Mr. Leigh's current injury is more likely attributable to the automobile accident in August 2001. After reviewing these reports, the ALJ rejected the opinions of Dr. Rosenthal and accepted the opinions of Dr. Johnson wherever they conflicted. Except in the case of treating physicians, the examiner is not required to give reasons for rejecting medical evidence of one party that conflicts with medical evidence presented by another party. *See Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.,* 821 A.2d 898, 904 (D.C.2003). The decision to credit Dr. Johnson over Dr. Rosenthal (the treating physician) was amply justified in the order. *See Short v. District of Columbia Dep't of Employment Servs.,* 723 A.2d 845, 851 (D.C.1998) (recognizing that a hearing examiner may choose to credit the testimony of a non-treating physician over a treating physician provided an explanation is supplied). The ALJ recounts that Dr. Rosenthal's records were replete with anomalies, including non-chronological progress reports [1] and internally inconsistent date references,[2] leading the ALJ to believe that Dr. Rosenthal "intentionally chose to keep two separate sets of records on this patient." Without speculating on why records would be kept in such a confusing manner, the ALJ noted that "Dr. Rosenthal's practice makes reliance on his records a doubtful exercise." [3] *See Clark,* 772 A.2d at 202 (noting that "equivocal nature" of treating physician's testimony is sufficient basis for hearing examiner to reject opinion) (citing *McKinley v. District of Columbia Dep't of Employment Servs.,* 696 A.2d 1377, 1386 (D.C.1997)). Conversely, the ALJ noted the relative reliability of Dr. Johnson's

1. Dr. Rosenthal's report includes the following notes in sequence: (1) a December 17, 2001 progress note discharging Mr. Leigh as a patient without reference to Mr. Leigh's work incident two days earlier, any recurrence of pain, or a new injury; (2) an "Orthopaedic Report" referencing an "initial visit" on January 14, 2002, in which Dr. Rosenthal traces the origin of the visit to a December 16, 2001 injury; (3) a progress note dated December 21, 2001 subsequently contained within the same Orthopaedic Report, without reference to the December 15 incident; and finally, (4) a second progress note dated January 14, 2002 within the same Orthopaedic Report, this time indicating that Mr. Leigh presented continuing symptoms of his injuries resulting from the December 15 work incident.

2. The ALJ found, "[t]hese records are inconsistent in their internal date references, suggesting that claimant saw [Dr. Rosenthal] on any or all of three dates, December 17, December 20, December 21, which seems highly unlikely."

3. The ALJ's hesitation to rely on records of the dubious type kept by Dr. Rosenthal is not unprecedented within the agency. We note that the ALJ specifically justified his concerns by referring to a prior administrative opinion, *Erickson v. W.M.A.T.A.,* H & AS No. 92–63, OWC No. 181489 (October 28, 1993), *aff'd* Dir. Dkt. No. 93–82 (June 5, 1997) (identifying "sketchiness" and imprecision in reports as sufficient reasons for rejecting opinion of a treating physician).

opinion, which included "clearly delineated views ..., supported as they are by a physical examination and a review of the complete medical record." *See Canlas,* 723 A.2d at 1212 (noting that hearing examiner's discretion to credit the testimony of a non-treating physician over a treating physician is widest where the non-treating physician examined the claimant).

 In reversing the compensation order, the director cited no reason to reject or ignore the ALJ's decision to credit Dr. Johnson over Dr. Rosenthal. *See Vista Hotel,* 721 A.2d at 578 (reversing the director's decision, in part, because there was no reason for the director to reject or ignore the hearing examiner's credibility finding); *see generally George Hyman Constr. Co. v. District of Columbia Dep't of Employment Servs.,* 498 A.2d 563, 566 (D.C.1985) ("[a] hearing officer's decisions are especially weighty when they involve credibility determinations"). Rather, the director's decision emphasizes a different set of facts in the record. Even were we to assume that such facts constitute substantial evidence in support of his decision, the director is not at liberty to substitute judgments based on his favored competing body of substantial evidence.[4] *Cf. Gary,* 723 A.2d at 1209. We conclude that because the ALJ's credibility determination in favor of Dr. Johnson was supported by substantial evidence, the director exceeded his permissible scope of review by disregarding it to come to his own conclusion drawn from an independent review of the record. *See Canlas,* 723 A.2d at 1211.

Accordingly, we reverse the decision of the director and remand to the agency for a disposition consistent with the findings in the compensation order.

*So ordered.*

---

4. We doubt that the facts independently marshaled by the director, see pages 884–85, *supra,* support the conclusion that Mr. Leigh's current injury is connected to the December 15 work-related incident. At most, these facts support the conclusion that Mr. Leigh requires additional medical care. On the germane issue of whether Marriott is responsible for whatever additional care Mr. Leigh requires, nothing in the record suggests that Dr. Rosenthal believed that Mr. Leigh's pain after the independent medical evaluation on April 29, 2002 was attributable to the work-related incident.