Raymond YOUNG, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,

and

FLIPPO CONSTRUCTION COMPANY and LIBERTY MUTUAL INSURANCE COMPANY, Intervenors.

No. 03–AA–1019.

District of Columbia Court of Appeals.

Submitted Oct. 12, 2004.

Decided Jan. 6, 2005.

verse the decision of the Director and direct the agency to affirm the decision of the hearing examiner.

Mark L. Schaffer, Washington, was on the brief for petitioner.

Curtis B. Hane, Rockville, MD, was on the brief for intervenors.

Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy Attorney General for the District of Columbia, filed a statement in lieu of brief for respondent.

Before REID, Associate Judge, and KING and STEADMAN,* Senior Judges.

REID, Associate Judge:

Petitioner, Raymond Young, filed a claim for workers' compensation benefits, pursuant to the District of Columbia Workers' Compensation Act of 1979, D.C.Code §§ 32–1501 et seq., for a shoulder injury allegedly sustained on July 24, 2000 while he was working as a carpenter for Flippo Construction Company. Mr. Young appeals a decision by the director of the District of Columbia Department of Employment Services ("Director" or "DOES") reversing a compensation order awarding him all the causally related medical expenses from this incident. Because we agree with Mr. Young that the Director effectively substituted his findings of fact for those of the hearing examiner, we re-

## FACTUAL SUMMARY

The record shows that on July 24, 2000, while working as a carpenter for Flippo Construction Company ("Flippo"), Mr. Young suffered a sudden, severe injury to his right shoulder when he lifted a metal fence post that was anchored in cement.[1] After notifying Flippo of his injury, Mr. Young was taken to Flippo's medical facility in Virginia, where he underwent a urinalysis and was given a prescription for pain medication. Mr. Young never returned to work for Flippo, and was subsequently terminated by Flippo for reasons unrelated to his injury.[2]

The following day, July 25, 2000, Mr. Young was instructed by Flippo to report for light duty work. However, Mr. Young informed Flippo that he was unable to report for work because he was seeking further medical attention for his shoulder injury. Mr. Young then contacted and visited the Veterans Administration Hospital, where he was given more pain medication. An X-ray examination of Mr. Young's shoulder taken by the medical staff at the Veterans Administration Hospital was negative for findings.

On August 15, 2000, Mr. Young sought further medical treatment for his shoulder from Dr. Edward Rabbitt, an orthopaedic surgeon, and the treating physician in this

---

* At the time of submission, Judge Steadman was an Associate Judge, Retired. His status changed to Senior Judge on October 18, 2004.

1. Mr. Young testified: "I felt this sharp pain shoot through my back and it felt like I pulled my shoulder out of place ...."

2. A few months after his employment with Flippo was terminated, Mr. Young was hired as a carpenter by V and V Construction company on two separate occasions. However, Mr. Young's shoulder injury prevented him from fulfilling the duties expected of a carpenter, and he was forced to leave the carpentry field. Since then, Mr. Young has been self-employed, performing light automotive mechanic work.

matter. Dr. Rabbitt's medical note of August 15, 2000, states in part: "Mr. Young was hurt lifting stumps on the 24th of July. He has hurt his right shoulder and low back .... The shoulder is very painful. Motrin 800 is not handling things." Dr. Rabbitt recommended that an MRI be taken of Mr. Young's shoulder due to his impression that Mr. Young had suffered a rotator cuff tear. Dr. Rabbitt issued a certificate of disability and ordered Mr. Young not to return to work from August 15 to August 29, 2000. Mr. Young underwent an MRI examination on August 23, 2000, at Magnetic Resonance Imaging of Maryland in Clinton, Maryland, the results of which showed that he had degenerative arthritis of the right acromioclavicular joint ("AC joint"), but no evidence of a tear in his rotator cuff.

On January 24, 2001, reporting no reduction in the level of pain experienced in his shoulder, Mr. Young requested that a second MRI examination of his shoulder be taken at the Veterans Administration Hospital.[3] Mr. Young was again referred to Dr. Rabbitt. On September 26, 2001, a second MRI examination was conducted at the Veterans Affairs Medical Center in the District of Columbia to determine the cause of Mr. Young's continuing pain. The examination confirmed the arthritic condition of Mr. Young's right shoulder, and also revealed a partial-thickness tear at or near the AC joint which was not apparent in the results of the first MRI examination.

In a letter dated January 24, 2002, Dr. Rabbitt recommended "surgical exploration" of the tear in Mr. Young's rotator cuff, and "possible repair as necessary." Dr. Rabbitt also recommended that Mr. Young undergo a subacromial decompres-

sion, and distal clavicular resection of the right shoulder. Dr. Rabbitt's recommendations were based on his examination of Mr. Young on August 15, 2000, and the results of the second MRI.

On April 16, 2002, Mr. Young submitted to an independent medical evaluation ("IME") of his shoulder by Flippo's physician, Dr. Steven Hughes. After reviewing the results of both of the MRI examinations, and Mr. Young's medical records, Dr. Hughes concluded that Mr. Young's "symptoms are related to degenerative changes of the shoulder and low back," and were not the result of the injury that he sustained while working for Flippo. Dr. Hughes reasoned that "there [was] no objective data that [could] correlate" his continuing shoulder pain "as being causally related" to the July 24, 2003 injury. However, Dr. Hughes does not set forth the July 24, 2000 injury under the section of his report labeled, "History of Injury." Rather, he states: "This 39 year-old right hand-dominant auto mechanic with no prior history of injury to the right shoulder or back relates that he had a confrontation with a supervisor at work and presented to Dr. Rabbitt in August of 2000 having stated that he hurt his shoulder and low back."

Mr. Young filed a claim for workers' compensation pursuant to the District of Columbia Workers' Compensation Act of 1979, D.C.Code §§ 32–1501 et seq., and a full evidentiary hearing was held on April 29, 2002, before Administrative Law Judge Karen Calmeise of the District of Columbia Department of Employment Services. After considering Mr. Young's testimony and the medical evidence presented by both parties, including the conflicting medical diagnoses of Dr. Rabbitt and Dr.

---

**3.** The several month gap in Mr. Young's attempt to get medical treatment can be attrib-

uted to his lack of health care coverage.

Hughes, Judge Calmeise issued a Compensation Order concluding that Mr. Young sustained an accidental shoulder injury on July 24, 2000 during the course of his employment with Flippo, and that he was therefore entitled to receive all medical expenses, including the recommended surgery, that were causally related to his injury.

Finding that Mr. Young had produced "sufficient evidence to invoke" the presumption of compensability, thereby raising the rebuttable presumption that his injury did in fact arise during the course of his employment, Judge Calmeise rejected Flippo's argument that Mr. Young's injury was caused by anything other than the July 24, 2000 work accident. Judge Calmeise reasoned that Mr. Young's "symptoms and complaints regarding his right shoulder and lower back[ ] have remained consistent since the July 24, 2000 accident." Moreover, Judge Calmeise stated the often repeated rule that "in cases of competing medical opinion, the opinions of the treating physician," here, Dr. Rabbitt, "are generally entitled to be accorded significant weight," and are more persuasive than the views of the IME physician, here, Dr. Hughes, "who is retained for the purpose of preparing for litigation." [4] Judge Calmeise clearly meant to reference the right shoulder and lower back, rather than a "cervical condition" in stating: "I found the medical opinion of treating physician to be most persuasive to resolve the issue of medical causation of claimant's cervical condition."

On April 18, 2003, Flippo filed an application for review of the Compensation Order of Judge Calmeise to the Director of the Department of Employment Services. The Director, after noting that the "sole issue on appeal … is whether the decision that [Mr. Young's] right shoulder condition is medically causally related to his July 24, 2000 work injury is supported by substantial evidence in the record," reversed Judge Calmeise's Compensation Order. The Director reasoned that while Judge Calmeise "did not make a finding that [Flippo] had rebutted the presumption [of compensability]," she must have reached this decision because she proceeded to "the next required analytical step when the presumption is rebutted." [5] Instead of remanding the case, however, the Director concluded that Mr. Young's medical evidence failed to demonstrate, by a preponderance of the evidence, that his "current shoulder complaints were [causally] related to the July 24, 2000 work injury." As such, the Director found that Mr. Young failed "to sustain his burden of proof after the presumption [was] rebutted," and he was therefore not entitled to be reimbursed for the medical expenses associated with his shoulder injury.

### ANALYSIS

Mr. Young claims that the Director of the Department of Employment Services effectively substituted his own findings of fact for those of Judge Calmeise.[6] Because we agree with Mr. Young, we reverse and remand.

4.  Judge Calmeise also found "the recent MRI finding of a partial rotator cuff tear compared to the first MRI, where no rotator cuff tear was detected, is not significant in determining that [Mr. Young's] current symptoms were related to the July 24, 2000 work injury."

5.  The Director's decision states that "the evidence in the record supports this legal con-

clusion," although the decision contains earlier seemingly contradictory language.

6.  Mr. Young also asserts that Flippo did not present sufficient evidence even to rebut the presumption of compensability, but we need not address that argument.

In reviewing an agency decision, we are guided by several well-established principles. "In workers' compensation cases, we defer to the decision of the agency director provided that the decision flows rationally from facts supported by substantial evidence in the record." *Marriott Int'l v. District of Columbia Dep't of Employment Servs.*, 834 A.2d 882, 885 (D.C. 2003) (citing *Clark v. District of Columbia Dep't of Employment Servs.*, 772 A.2d 198, 201 (D.C.2001)). The director "conducts a limited review of decisions of a hearing examiner to determine whether the examiner's findings are supported by substantial evidence in the record." *Landesberg v. District of Columbia Dep't of Employment Servs.*, 794 A.2d 607, 612 (D.C., 2002) (citing *Children's Def. Fund v. District of Columbia Dep't of Employment Servs.*, 726 A.2d 1242, 1247 (D.C.1999)) (quotations omitted). "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ferreira v. District of Columbia Dep't of Employment Servs.*, 667 A.2d 310, 312 (D.C.1995) (citing *James v. District of Columbia Dep't of Employment Serv.*, 632 A.2d 395, 397 (D.C.1993)) (quotations omitted).

Furthermore, we have stated that "the director may not consider the evidence *de novo* and make factual findings different from those of the examiner." *Marriott*, 834 A.2d at 885 (citing *Canlas v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 1210, 1211 (D.C.1999)). "Indeed, the director is bound by the hearing examiner's findings of fact even though the director may have reached a contrary result based on an independent review of the record." *Marriott*, 834 A.2d at 885. "If substantial evidence exists to support the hearing examiner's findings, the existence of substantial evidence to the contrary does not permit the director to substitute his judgment for that of the examiner." *Id.*

Under the Workers' Compensation Act, once a claimant demonstrates a work-related event and a corresponding disability, there is a presumption that the claim comes within the provisions of the Act. *See* D.C.Code § 36–321(1). To rebut the presumption that there is a causal connection between the disability and the work related event, "the employer must show by substantial evidence that the disability did not arise out of and in the course of the employment." *Ferreira*, 667 A.2d at 312 (citation omitted). If the employer is able to rebut the presumption of compensability, the burden shifts to the worker to show by a preponderance of the evidence a causal connection between the disability and the work related event. *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 827 A.2d 35, 40 (D.C.2003).

The Director essentially rejected Judge Calmeise's conclusion that Mr. Young had demonstrated a causal connection between his injury and his employment, instead finding that Mr. Young had failed to show a causal connection between the two. The Director reached this result based on his independent review of the medical reports presented by Mr. Young and Flippo. The Director stated, "[a] review of Dr. Rabbitt's medical reports reveals that while he recorded the Claimant's complaints, the findings on physical examination of the Claimant, as well as his diagnosis and recommended course of treatment, Dr. Rabbitt did not indicate whether the Claimant's current shoulder complaints were related to the July 24, 2000 work injury." In drawing this conclusion, the director failed to take full heed of Dr. Rabbitt's complete medical records and notes, including that of August 15, 2000, relating Mr. Young's shoulder injury to

the lifting of the stumps and noting his impression that Mr. Young suffered a rotator cuff tear. It also discounts the fact Judge Calmeise's conclusion was "[b]ased upon the medical evidence together with [Mr. Young's] testimony, [all of which caused the Judge to determine that] claimant presents sufficient credible and unrebutted evidence that he did sustain an injury on June (sic) 24, 2000 which is causally related to his work...." [7] Moreover, even though Dr. Hughes does not mention the July 24, 2000 accident in the section of his report entitled, "History of Injury," the director nevertheless credits Dr. Hughes report above that of Mr. Young's treating physician.

■■ Where, as in a situation like this, Judge Calmeise examined Mr. Young's evidence and concluded that there was a causal connection between his injury and his employment, the Director was not at liberty to re-examine the evidence and reach a different result. As we said in *Washington Vista Hotel v. District of Columbia Dep't of Employment Servs.,* 721 A.2d 574 (D.C.1998), "[t]he director may not consider the evidence *de novo* and make factual findings different from those of the examiner; rather, [he] may reverse the examiner's decision only when it is not supported by substantial evidence." *Id.* at 578 (citations omitted). We conclude that Dr. Rabbitt's medical opinion, which was based on his medical examination of Mr. Young and the second MRI, in conjunction with Mr. Young's testimony describing the extent, nature, and cause of his shoulder pain, provided Judge Calmeise with "substantial evidence" to draw the conclusion that his injury was causally related to his employment with Flippo. Given the existence of this "substantial evidence," the

Director should not have independently "consider[ed] the evidence *de novo*" thereby "substitut[ing] his judgment" for that of Judge Calmeise. *Marriott,* 834 A.2d at 885, 887.

Accordingly, for the foregoing reasons, we reverse the Director's decision and remand the case to the agency for further proceedings consistent with this opinion.

*So ordered.*

7. Judge Calmeise's use of the word "unrebutted" presumably reflects the insufficiency of the contrary evidence.