*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-AA-407

MARRIOTT AT WARDMAN PARK, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

SYLVIA GORHAM, INTERVENOR.

Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(CRB-10-12)

(Submitted February 5, 2014            Decided March 6, 2014)

*Alan D. Sundburg* was on the brief for petitioner.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Donna M. Murasky*, Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, filed a statement in lieu of brief for respondent.

*Rebekah A. Miller* was on the brief for intervenor.

Before THOMPSON and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

THOMPSON, *Associate Judge*: Petitioner Marriott at Wardman Park ("Marriott") challenges the March 2, 2012, decision of the Department of Employment Services ("DOES") Compensation Review Board (the "Board" or the "CRB") affirming a December 27, 2011, Compensation Order on Remand, in which a DOES Administrative Law Judge (the "ALJ") concluded that claimant/intervenor Sylvia Gorham did not voluntarily limit her income and was entitled to continue receiving temporary total disability payments related to an on-the-job injury she incurred in September 2005. Because the Board's ruling is supported by substantial evidence in the record and is not contrary to law, we affirm.

## I.

The pertinent background, as drawn from uncontroverted hearing testimony and the ALJ's factual findings, is as follows. On September 25, 2005, when Gorham was employed by Marriott as a hotel lobby housekeeping attendant, she injured her back while attempting to lift a trash bag. The injury aggravated a pre-existing back condition and caused pain in Gorham's lumbar region and right leg. The ALJ found that "[e]xcept for one attempt to return to work in 2009[,]" Gorham "has remained off work since the date of the work injury." Gorham underwent a

lumbar decompression procedure in August 2007, but continued to have back pain and "continued in off work status" on the recommendation of her treating surgeon, Dr. Warren Yu. Dr. Yu prescribed Vicodin (a narcotic painkiller) and Flexeril (a muscle relaxant).

After Marriott offered Gorham a sedentary position in the hotel laundry room, she reported for work on July 15, 16, and 17, 2009.[1] Gorham testified, however, that on each of those days, she stopped work early after she experienced pain and required medical care or became too drowsy to continue working after taking her pain medication.

Marriott suspended payment of wage loss benefits to Gorham, contending that she had voluntarily limited her income when she declined to return to work in March 2009 and failed to return to work after July 17. Gorham sought a restoration of temporary total disability benefits, and the matter came before the ALJ for a hearing on July 24, 2009.

---

[1] Marriott had offered Gorham what it contended was suitable alternative employment in March 2009, but the ALJ found that Marriott had failed to show that the work offered was commensurate with Gorham's work restrictions. Marriott did not appeal that determination to the Board, and it is not an issue in the instant petition.

Testifying at the July 24 hearing, Gorham acknowledged that the prescribed dosage of her pain medications was one dose approximately every four hours, but testified that she took them "[a]s needed" for her pain. She estimated that she took a dose of each medication "about every hour or every two hours" and that the Vicodin made her "sleepy and drowsy." She further testified that when she was at work on July 15 and July 17, she had taken only one dose of her medications (she did not testify regarding the dosage she used on July 16). In addition, she testified that on the day of the hearing, she had taken only one dose of each medication at about 9:30 a.m. (which was about two hours prior to her testimony). At various points during the hearing, she requested to stand while she gave her testimony, told the ALJ that she was unable to read an exhibit that was presented to her because it appeared "blurry," and stated that she was "in a little pain, [and] dizzy and stuff from the medicine." At one point, the ALJ announced a ten-minute recess to allow Gorham to "have a little bit of . . . fresh air" and water.

The ALJ issued a Compensation Order on November 9, 2009, in which she concluded that the work Marriott offered Gorham in July 2009 met the physical restrictions imposed by Gorham's physicians and constituted suitable alternative employment. The ALJ also determined, however, that "based upon [her]

observance of [Gorham's] behavior and demeanor at the Formal Hearing, and . . . consideration of her testimony," Gorham "is not employable in her current condition." The ALJ determined that Gorham's "over-use of prescription narcotic medication does not allow her to be fully responsive while on duty[,]" and that Gorham "remain[ed] temporarily totally disabled until such time as efforts are taken to decrease her use and dependence on narcotic pain medication."

Marriott sought the Board's review of the initial Compensation Order, arguing that the ALJ had erred in determining that Gorham was entitled to ongoing temporary total disability benefits even though the ALJ had found that Gorham left her employment in July 2009 for reasons unrelated to her work injury (i.e., over-use of her prescribed medication, which Marriott asserted amounted to a voluntary limitation of income[2]). The Board remanded the case to the ALJ, concluding that the ALJ had not properly assessed Gorham's work capacity and

---

[2] *See* D.C. Code § 32-1508 (3)(V)(iii) (2012 Repl.) (providing in pertinent part that "[i]f the employee voluntarily limits his or her income or fails to accept employment commensurate with the employee's abilities, the employee's wages after the employee becomes disabled [which affect the amount of any disability compensation that is payable, *see* § 32-1508 (3)(V)(ii)] shall be deemed to be the amount the employee would earn if the employee did not voluntarily limit his or her income or did accept employment commensurate with the employee's abilities").

had incorrectly applied a substantial-evidence standard of proof, rather than the applicable preponderance-of-the-evidence standard.[3]

On December 27, 2011, the ALJ issued a Compensation Order on Remand, applying the preponderance-of-the-evidence standard. The ALJ found that Gorham "often took [her] pain medication more often than prescribed,"[4] but also found that the prescribed medications, "when taken as prescribed, cause [Gorham] to have side effects of confusion and drowsiness." The ALJ further found that the job that Marriott offered Gorham in July 2009 "met her physical restrictions of light duty work and no lifting in excess of 20 pounds[,]"but that Gorham was not able to work "due to her continued complaints of low back pain and radiculopathy and the side effects of sleepiness and confusion from the prescription pain medications" and "due to the prescribed narcotic pain medication." The ALJ noted that after Gorham went to work on July 15, 16, and 17, 2009, she "left each day due to medical emergencies" and needed medical attention for her

---

[3] The Board also vacated the portion of the initial Compensation Order that it characterized as "requiring treatment" to decrease Gorham's dependence on her narcotic pain medication, stating that "[n]either party [had] requested []or addressed this issue at the hearing[.]"

[4] The ALJ found that although Gorham "was instructed to take the Vicodin every four hours, she was taking the prescription pain medication every hour or every two hours."

"unresponsiveness, sleeping, and nodding out." The ALJ also noted Gorham's testimony that she had taken her narcotic medication before the hearing and that the ALJ had called a recess to allow Gorham to "re-focus her attention to the hearing proceedings." The ALJ concluded, on the basis of Gorham's behavior and demeanor at the hearing and her testimony, that she was "unable to perform the work duties assigned because [her] prescribed pain medication caused her to become drowsy and sleepy after she reported to work." The ALJ determined that Gorham did not voluntarily limit her income and remained temporarily totally disabled and entitled to wage loss benefits after March 2009.

Marriott again sought review by the Board, challenging the ALJ's determination that Gorham did not voluntarily limit her income. Marriott argued that Gorham was not taking her medication at the frequency advised by her physician and that her "self-directed over-medication constitutes a voluntary action" to limit her income. Marriott also challenged the ALJ's reliance "solely on the [ALJ's] own observation" of Gorham at the hearing, asserted that no medical evidence was submitted at the hearing to suggest that Gorham's prescription medication "if used as prescribed, would preclude [her] from engaging in the proffered light duty employment," and argued that the Compensation Order on Remand therefore was unsupported by substantial evidence.

The Board affirmed the Compensation Order on Remand, stating that:

> Although [Gorham] admittedly was taking more th[a]n what was prescribed to treat her symptoms as a result of the injury, the ALJ was within her authority to take the effects of the medication on [Gorham] into consideration and find that this rendered her unable to work, based in part on her observation of [Gorham] at the Formal Hearing.

The Board also noted that on July 23, 2009, the day before the hearing before the ALJ, Gorham "was taken out of work completely by her treating physician[.]" This was a reference to a physician's note, admitted into evidence during the hearing before the ALJ, on which Dr. Yu had checked a box indicating that Gorham's work status was "no work" (as opposed to "full duty" or "limited duty").[5] The Board acknowledged that there "may be substantial evidence to the contrary," but concluded that there also was substantial evidence to support the ALJ's conclusion in the Compensation Order on Remand.

---

[5] According to the brief that Gorham filed with the Board opposing Marriott's application for review of the Compensation Order on Remand, Dr. Yu also noted on July 23, 2009, that Gorham continued to experience persistent pain and "ha[d] not been able to tolerate [] sedentary activities and light duty activities." This note was not offered as an exhibit at the hearing or otherwise brought to the attention of the ALJ, and we do not rely on it here.

This petition for review followed.

## II.

In its brief to this court, Marriott asserts that the Board "erred in affirming a finding that [Gorham's] over-use of prescription medication, precluding gainful employment, did not constitute a voluntary limitation of income." Marriott particularly challenges the Board's affirmance of the ALJ's decision on the grounds that (1) the ALJ relied on her own observation of Gorham's behavior and demeanor at the hearing and (2) "no medical evidence was submitted . . . to suggest that [Gorham's] . . . prescription medication, if used as prescribed, would preclude [her] from engaging in the proffered light[-]duty employment."

"'In a workers' compensation case, we review the decision of the Board, not that of the ALJ . . . however, we cannot ignore the compensation order which is the subject of the Board's review.'" *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 992 A.2d 1276, 1280 (D.C. 2010) (quoting *Georgetown Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 916 A.2d 149, 151 (D.C. 2007)). Our standard of review mirrors that which the Board is bound to apply. *See Marriott Int'l v. District of Columbia Dep't of Emp't Servs.*,

834 A.2d 882, 885-86 (D.C. 2003). That is, the Board was not entitled to consider the evidence de novo or to make factual findings different from those of the ALJ. *Id.* at 885. Rather, the Board was bound by the ALJ's findings of fact even if it might have reached a contrary result based on an independent review of the record. *Id.* Further, "[i]f substantial evidence exists to support the [ALJ's] findings, the existence of substantial evidence to the contrary [did] not permit the [Board] to substitute [its] judgment for that of the [ALJ]." *Id.* "Substantial evidence" is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Credibility determinations of [an ALJ] are accorded special deference by this [c]ourt." *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 830 A.2d 865, 870 (D.C. 2003) (internal quotation marks omitted).

In this case, we discern no reason to disturb the Board's conclusion that substantial evidence supported the ALJ's determination on remand. As described above, although Gorham acknowledged that she was taking both of her medications in excess of the recommended dosage, she also testified that (1) on two of the days in July 2009 when she attempted to work in the light-duty position to which she was assigned, she was unable to do the work because of both pain and drowsiness, which she felt even though she had not exceeded the recommended dosage of her medications by the time she reported to work or by the time she left

work, and (2) she had taken only one dose of her prescribed medications on the day of the hearing, during which (the ALJ found, having observed Gorham's demeanor and behavior during the hearing) she had difficulty focusing. Further, Gorham told the ALJ that she was in pain during the hearing, and asked to stand during a portion of her testimony. The ALJ was entitled to credit Gorham's testimony about how much medication she took on specified days, to credit her testimony that her narcotic medication made her feel drowsy on the days she tried to work in July 2009, and to rely on first-hand observations about Gorham's mental state during the hearing.[6] Gorham's credited testimony and the ALJ's observations constituted substantial evidence supporting the ALJ's finding that Gorham's medications, "when taken as prescribed, cause [her] to have side effects of confusion and drowsiness" and that Gorham was not able to work "due to her continued complaints of low back pain."

Marriott argues that Gorham presented no medical evidence to support her contention that she was incapable of employment. This argument ignores Dr. Yu's

---

[6] *Cf. Ward v. Commissioner*, No. 94-2140, 1995 U.S. App. LEXIS 37044, *10 (6th Cir. Dec. 4, 1995) (Social Security disability case stating that "[t]he ALJ may consider his personal observations at the hearing, along with all the relevant evidence, so long as the ALJ does not rely solely on his own impressions to make his decision"); *see also Lincoln Hockey, LLC v. District of Columbia Dep't of Emp't Servs*., 831 A.2d 913, 920 n.7 (D.C. 2003) (looking to Social Security disability rule that was analogous to worker's compensation rule).

July 23, 2009, note indicating Gorham's "no work" instruction. We recognize that, during the July 24 hearing, Marriott argued that the ALJ should not rely on Dr. Yu's brief note because it was indistinguishable from a disability slip that Dr. Yu had issued in November 2008 even though, as he stated during his June 30, 2009, deposition, he was then of the opinion that Gorham could "return to work at a position which involved no lifting of greater than 20 pounds." However, Dr. Yu further testified that while "from a structural standpoint and an anatomical standpoint," Gorham's restrictions were with respect to lifting and physical labor, there were also "overlying factors beyond the actual structural pathology," and that Gorham's "physical limitations are going to be based on her perception of pain in her low back." We are satisfied that this testimony, in conjunction with the other evidence presented at the hearing, was substantial evidence supporting the ALJ's determination that Gorham continued to be temporarily totally disabled.[7]

---

[7] *Cf. Clark v. Astrue*, No. CV-11-2561-PHX-BSB, 2013 U.S. Dist. LEXIS 9020, *28-*30 (D. Ariz. Jan. 23, 2013) (Social Security disability case summarizing the holdings of appellate cases establishing that a claimant "is not required to show objective medical evidence of . . . pain" and that, to determine whether a claimant's testimony regarding subjective pain is credible, an ALJ must consider whether there is medical evidence of an underlying impairment which "could reasonably be expected to produce the pain" and may reject a claimant's testimony regarding the severity of her symptoms only if the ALJ makes a finding of malingering based on affirmative evidence or cites clear and convincing reasons for finding the claimant not credible). In the worker's compensation context, this court, too, has recognized that a claimant's "credible complaints of . . . pain" can

(continued…)

For the foregoing reasons, the decision of the Compensation Review Board is affirmed.

*So ordered.*

---

(…continued)

support a claim of disability. *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't. Servs.*, 683 A.2d 470, 477 (D.C. 1996).