926 A.2d 140 (2007)
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY (WMATA), Petitioner,
v.
DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.
Juni Browne, Intervenor.
No. 06-AA-27.
District of Columbia Court of Appeals.
Argued January 25, 2007.
Decided June 14, 2007.
*142 Sarah O. Rollman, Assistant General Counsel, with whom Carol B. O'Keefe, General Counsel, and Mark F. Sullivan, Deputy General Counsel were on the brief, for petitioner.
Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General for the District of Columbia, and Pastell Vann, Senior Assistant Attorney General, filed a statement in lieu of brief, for respondent.
Heather C. Leslie, for intervenor.
Before FARRELL and RUIZ, Associate Judges, and WINFIELD, Senior Judge, Superior Court of the District of Columbia.[*]
*143 WINFIELD, Senior Judge:
The intervenor/claimant, Juni Browne, filed a worker's compensation claim, pursuant to D.C.Code § 32-1501 et seq., for temporary total disability after a bus he was driving was struck in the rear by a car. An evidentiary hearing was held before Administrative Law Judge (ALJ), Henry W. McCoy, of the District of Columbia Department of Employment Services (DCDOES). The ALJ credited the claimant's testimony that as a result of the accident on the job, he injured his back, wrist, and right knee and that as a result of these injuries, he suffered continuous knee pain and intermittent back pain through the date of the hearing. The ALJ also credited the opinions of the treating physicians who reported that Mr. Browne was not fit for duty as a bus driver from the time they first examined him until he returned to work against their medical advice. The ALJ further took administrative notice that in order to drive a bus, a driver must use his arms to steer and reach, he must also stand and walk, turn his torso repetitively, and use his right leg to engage the accelerator and brake pedals. Despite these findings of fact, however, the ALJ concluded that although there was substantial evidence that Mr. Browne had been injured in a work-related incident, resulting in a disabling condition, there was not substantial evidence of the nature or extent of his disability to justify his claims. The ALJ concluded that the evidence was insufficient to show how Mr. Browne's injuries restricted his capacity to drive a bus. Accordingly, the ALJ denied the claims.
Mr. Browne appealed to the Compensation Review Board (CRB) of the DCDOES Office of Hearings and Adjudication (OHA). On December 16, 2005, a Compensation Review Panel of the CRB reversed the ruling of the ALJ in part, concluding that there was substantial evidence to support the ALJ's findings of fact, but that his ultimate conclusions did not flow rationally from those findings. Instead of remanding the matter to the ALJ for a conclusion consistent with his factual findings, however, the CRB ordered that Mr. Browne be compensated in full for his claims.
WMATA, Browne's employer, files the instant petition for review contending that the CRB failed to properly review the conclusions of the ALJ, but instead substituted its judgment of the facts. We hold that the CRB properly reviewed the findings of the ALJ, but because the CRB is not authorized to issue a compensation order, we reverse the decision of the CRB and remand this case for further proceedings consistent with this opinion.

FACTUAL SUMMARY
The record shows that Mr. Juni Browne was a bus driver for WMATA for five years before he was injured on August 25, 2004. At the moment when a car ran into the back of his bus, Mr. Browne was out of his seat, attempting to help a passenger who was on the stairs of the bus. As a result of the impact, Mr. Browne fell forward inside the bus, injuring his back, right knee and right wrist.[1] Within days after this accident, Mr. Browne went to his HMO-provided doctor at Kaiser Permanente.[2] The doctor did not order X-rays *144 to be taken. He merely prescribed pain medications. Because Mr. Browne did not "normally go to doctors" and because he had little "faith in them," he did not return to his Kaiser doctor despite an increase in his pain symptoms over time. Instead, he treated his injuries himself with heat wraps and the prescribed medications.
A little more than one month later, on October 4, 2004, Mr. Browne met with a doctor at Phillips & Green, M.D., LP, an orthopedic surgery practice. Mr. Browne testified that he went to these doctors because he had treated successfully with them after an earlier bus accident and injury.[3] Mr. Browne was treated by Richard S. Meyer, M.D. and Fredric L. Salter, M.D. Dr. Meyer prescribed an MRI of the right knee and recommended physical therapy (PT) to alleviate continuing pain in Browne's back and knee. Mr. Browne underwent PT treatments approximately twice per week[4] until February 2005. At each periodic medical evaluation, the doctors at Phillips and Green declared that Mr. Browne was unfit to return to work as a bus operator. They did not otherwise restrict or limit his physical activities.
On November 2, 2004, at the employer's behest, Mr. Browne was evaluated by Dr. Robert Gordon, an independent medical examiner (IME). Dr. Gordon opined that Browne suffered from no more than contusions and a strain of the right knee and was fit to work as a bus driver. Eventually, Mr. Browne successfully returned to work in March 2005 without obtaining a medical clearance or release to return to work from his treating doctors.
The periods when Mr. Browne did not work and was not compensated were from August 26, 2004 until October 3, 2004 and from November 12, 2004 until March 17, 2005. Between these two periods, although Mr. Browne was not working, his employer, WMATA, voluntarily paid him.

PROCEDURAL HISTORY
Mr. Browne filed a worker's compensation claim for authorization for an MRI of his right knee and for temporary total disability for the periods August 26, 2004 through October 3, 2004 and November 12, 2004 through March 17, 2005. Mr. Browne was the only witness who testified before Administrative Law Judge Henry W. McCoy. The exhibits of the parties included the medical and billing records from Phillips and Greene, photographs of the bus and the car that struck the bus, and Dr. Gordon's report. During his testimony, Mr. Browne stated that at the moment of the accident, he felt pain in his back, wrist and knee that increased during the next day. He stated that despite receiving a muscle relaxant (Flexeril) and an anti-inflammatory (Motrin), the pain got worse. Browne testified that he did not return to work because he was "injured." He stated that even while receiving physical therapy, he did not return to work because he was "not able to work." He testified that as of the date of the hearing, his knee and back were improving with *145 therapy but that infrequently, he continued to experience sharp pain in his knee.
The ALJ found that Mr. Browne was credible when he described the accident, his injuries and the resultant pain that he experienced. The ALJ further found that Mr. Browne's injuries arose during the course of his employment with WMATA and that Mr. Browne's persistent right knee pain was causally related to the work accident. The ALJ concluded that the claimant therefore was entitled to a presumption of compensability.[5] The ALJ took "judicial" notice[6] that to operate a bus, an individual is physically required to use his arms to turn the wheel and to reach, to do some standing and walking, to repetitively turn his head and upper torso, and to use his right leg to depress the accelerator and brake.
Notwithstanding having made these findings, the ALJ concluded that the claimant failed to provide "substantial credible evidence" on the issue of his ability to work during either claim. Specifically, as to the first claim period, the ALJ found that Browne's testimony alone was "devoid of any mention of how and to what extent he was incapacitated from performing his normal duties as a bus operator." Further, the ALJ explained that Mr. Browne provided neither testimony nor documents to show how the injuries he suffered "restricted his capacity to perform any of his regular activities either at home or on the job." (emphasis added).[7] Thus, the ALJ concluded that Mr. Browne did not meet his burden of proof that he was entitled to disability benefits.[8]
As to the second claim period, the ALJ found that Browne's testimony "that . . . he continued to experience pain in his right knee was substantiated by the treating physician, Dr. Meyer, over the course of his treatment." According to the ALJ, Dr. Meyer diagnosed Mr. Browne initially with "internal derangement of the right knee, lumbosacral spine strain, and contusion/sprain of the right wrist." The ALJ further found that "Dr. Meyer continued to find tenderness and spasm along the mid to lower lumbar and paralumbar area" and tenderness about the "medial joint line *146 of the right knee." According to the ALJ, Mr. Browne was "symptomatic in his right knee" even as of the last evaluation by Dr. Meyer on March 16, 2005.
The ALJ noted the law in the District of Columbia that entitles a treating physician's opinion to greater weight than a conflicting opinion of a non-treating physician unless there are persuasive reasons to find otherwise. Consistent with this law, the ALJ accorded "the greater weight to the claimant's [medical] evidence in support of his claim over that of the employer's." The ALJ credited the treating physician, Dr. Meyer, who deemed Browne to be "not fit for working duty as a bus operator" during the entire course of his treatment. The ALJ noted that the treating physician's medical opinions were based upon "objective diagnostic testing correlated with examinations." The ALJ noted that although Dr. Meyer did not release Browne to return to work in March 2005, Dr. Meyer had apparently expressed "understanding [of Browne's] stated financial reason for doing so."
The ALJ concluded that the claimant's credible evidence, including his testimony, coupled with administrative notice of some of the physical requirements of operating a bus, combined with objective diagnostic tests, medical examinations and the repeated opinions of the treating physician that the claimant was unfit for duty as a bus operator, were sufficient only to establish that Mr. Browne's knee pain "continued unchanged from the date the treatment started to the date of the hearing." The ALJ concluded that what was missing was evidence of how the pain limited Mr. Browne from performing his job as a bus operator.
As a result, the ALJ denied the claim as to both periods of temporary total disability, but granted the request for an MRI of Mr. Browne's right knee. On appeal, the CRB reviewed the case and found that there was substantial record evidence that could have supported a denial of compensation, had the ALJ made different findings of fact. However, the CRB noted that the ALJ had specifically rejected such findings.[9] The CRB noted, moreover, that the specific findings that the ALJ did make are also supported by substantial evidence of record. The Review Panel, however, concluded that the decision to deny compensation does not derive rationally from the findings that were made. Accordingly, the CRB concluded that the ALJ's ruling was "not in accordance with the law." The CRB therefore affirmed that portion of the ALJ's order that authorized an MRI and reversed that portion of the order that denied temporary total disability as to both periods claimed. The last phrase of the CRB order states: ". . . and the claims therefore are hereby granted."

ANALYSIS
The scope of our review of the decision of the CRB is the "substantial evidence" standard. "We must determine first, whether the agency has made a finding of fact on each material contested issue of fact; second, whether the agency's findings are supported by substantial evidence on the record as a whole; and third, *147 whether the Board's conclusions flow rationally from those findings and comport with the applicable law." Mills v. District of Columbia Dep't of Employment Servs., 838 A.2d 325, 327 (D.C.2003); Ferreira v. District of Columbia Dep't of Employment Servs., 667 A.2d 310, 312 (D.C.1995); see also Landesberg v. District of Columbia Dep't of Employment Servs., 794 A.2d 607 (D.C.2002); Children's Defense Fund v. District of Columbia Dep't of Employment Servs., 726 A.2d 1242 (D.C.1999).
"Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ferreira, 667 A.2d at 312. "In a worker's compensation case, we review the decision of the Board, not that of the ALJ. (Citation omitted). In doing so, however, we cannot ignore the compensation order which is the subject of the Board's review." Georgetown Univ. Hosp. v. District of Columbia Dep't of Employment Servs., 916 A.2d 149, 151 (D.C.2007).
The role of the CRB is likewise limited to "a review of the decision of a hearing examiner `to determine whether the examiner's findings are supported by substantial evidence' in the record" and to determine whether the legal conclusions drawn by the examiner are in accordance with applicable law. Landesberg, 794 A.2d at 612. See also Young v. District of Columbia Dep't of Employment Servs., 865 A.2d 535 (D.C.2005); Children's Defense Fund, supra; D.C.Code §§ 32-1521.01(d)(2)(A) (Supp.2006). To the extent that the CRB properly conducts its review of the decision of the ALJ, we will affirm the ruling unless it is "arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law." Landesberg, 794 A.2d at 612.
D.C.Code § 32-1521.01(d) expressly constrains the role of the Compensation Review Board to:
(1) Review the compensation order for legal sufficiency;
(2) Dispose of the matter under review by issuing an order affirming the compensation order; reversing the compensation order, in whole or in part, and amending the order based on the panel's findings, or by remanding the order to the issuing Administrative Law Judge for further review; except, that:
(A) The panel shall affirm a compensation order that is based upon substantial evidence and is in accordance with this chapter and other applicable laws and regulations and shall not disturb factual findings contained in the compensation order that are supported by substantial evidence; and
(B) Any reversal, in whole or in part, shall be supported by a written order, which shall contain the legal and factual basis for the reversal, and may amend the compensation order, in whole or in part, or remand the matter to the issuing Administrative Law Judge for additional findings of fact or conclusions of law and the issuance of a compensation order on remand.
According to this provision, the Review Board "may not consider the evidence de novo and make factual findings different from those of the examiner." Marriott Int'l v. District of Columbia Dep't of Employment Servs., 834 A.2d 882, 885 (D.C.2003). "If substantial evidence exists to support the hearing examiner's findings, the existence of substantial evidence to the contrary does not permit the [CRB] to substitute [its] judgment for that of the examiner." Id; Young, supra, 865 A.2d at 540.
In the instant case, the CRB recognized the limits of its review by properly stating the applicable standard in its decision and order. Notwithstanding this, the *148 CRB issued a compensation award in addition to reversing the decision of the ALJ. Nothing in the statutory scheme permits the CRB to issue a compensation award. See D.C.Code §§ 32-1501 et seq. (Supp. 2006). Although D.C.Code § 32-1521.01 provides that the CRB may amend a compensation order, this language does not authorize the CRB to reverse an order of an ALJ denying compensation and in its place issue an award of compensation.[10] In cases where, as here, the CRB concludes that the ALJ's findings compel an award of compensation, it must remand the matter to the ALJ with instructions that the latter issue such an order. The decision by the CRB to award compensation must, therefore, be reversed and the matter must be remanded.
Notwithstanding the need to remand this matter, we agree with the CRB's analysis of the findings and conclusions of the ALJ. The issue on appeal to the CRB was whether the ALJ made findings of fact on each material contested issue of fact, whether there was substantial evidence of record to support those findings, and, whether the conclusion to deny compensation flowed rationally from the findings of fact and the applicable law.
Proof of a compensable injury is distinguishable from proof of a causal relationship between an injury and employment. Spartin v. District of Columbia Dep't of Employment Servs., 584 A.2d 564 (D.C.1990). D.C.Code § 32-1521(1) provides:
In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of evidence to the contrary:
(1) That the claim comes within the provisions of this chapter. . . .
Thus, when an employee proves that his injury occurred while on the job and that the injury resulted in a disabling condition that prevented him from working, he is entitled to a presumption that his worker's compensation claims are compensable. Davis-Dodson v. District of Columbia Dep't of Employment Servs., 697 A.2d 1214 (D.C.1997); Whittaker v. District of Columbia Dep't of Employment Servs., 668 A.2d 844 (D.C.1995); Baker v. District of Columbia Dep't of Employment Servs., 611 A.2d 548 (D.C.1992). "To rebut the presumption of work-relatedness, the employer must show by substantial evidence that the [injury and/or] the disability did not arise out of and in the course of the employment." Davis-Dodson, 697 A.2d at 1217; Baker, 611 A.2d at 550. See also Parodi v. District of Columbia Dep't of Employment Servs., 560 A.2d 524 (D.C. 1989); Ferreira, 667 A.2d at 312.
On the issue of causality, the ALJ found and the CRB affirmed that Mr. Browne was entitled to a rebuttable presumption that his injuries arose out of, and occurred in the course of his employment as a bus driver. According to the ALJ, Mr. Browne presented credible evidence of his injuries that arose shortly after a bus accident that caused him to strike his knee and jar his back and wrist. The ALJ further found that the work-related injuries resulted in a disability of chronic knee and back pain. The ALJ credited Mr. Browne's testimony that he suffered continuing knee and back pain from the accident that prevented him from working as a *149 bus driver. The ALJ further accepted the testimony of Browne's treating physicians whose reports and examinations corroborated the claimant's testimony. The ALJ then found that the employer, WMATA, did not adequately rebut the presumption of compensability because the medical opinion of its IME was neither specific nor comprehensive. There is substantial evidence in the record to support the decision of the CRB to affirm these findings and conclusions.[11]
On the question of the nature and extent of Mr. Browne's disability, the ALJ properly acknowledged that the claimant is not entitled to any presumptions. Davis-Dodson, supra; Dunston v. District of Columbia Dep't of Employment Servs., 509 A.2d 109 (D.C.1986). The worker's compensation act defines disability as a "physical or mental incapacity, because of injury which results in the loss of wages." D.C.Code § 32-1501(8).[12] Despite the statement by the ALJ in this, and many other cases, that the claimant's burden of proving the extent of a disability is "substantial credible evidence," the correct burden of proof is a preponderance of the evidence.[13]Burge v. District of Columbia Dep't of Employment Servs., 842 A.2d 661, 666 (D.C.2004); Upchurch v. District of Columbia Dep't of Employment Servs., 783 A.2d 623, 628 (D.C.2001).
Here, the ALJ found that the claimant had failed to offer sufficient proof of both the nature and extent of his incapacity to work as a bus driver. Yet, the ALJ found facts that identified the nature of the incapacity.[14] The only conclusion that flows rationally from the facts that were found is that the nature of claimant's disability was chronic pain in his back and wrist that eventually resolved and chronic pain in his right knee that continued throughout the course of both periods for which he claimed temporary total disability. Likewise, the extent of Mr. Browne's disability was established by the factual findings made by the ALJ. These facts demonstrated that Mr. Browne's pain prevented him from working at all during either claim period. Although Browne's claim of pain is subjective, it was corroborated by objective tests and the opinions of his treating doctors. This is the only reasonable meaning of their statements that Mr. Browne was "unfit" for work duty. *150 The ALJ concluded that the treating physicians failed to acknowledge the physical requirements of Mr. Browne's job. Yet, the physical requirements of the job of a bus driver are so commonly known that the ALJ deemed it appropriate to take administrative notice of the minimum requirements. It is unclear then, why he concluded that the doctors had failed to recognize these same job requirements when they formed their medical opinions.
In order to grant the claims in this case, the ALJ seemed to require specific testimony that Mr. Browne's pain was so intense that it rendered him unable, at all or in part, to stand, walk, reach, turn, steer, or engage the brake and accelerator pedals as required to drive a bus. But such a requirement promotes form over substance. The only reasonable inference that derives from the facts, including those that were administratively noticed, is that Mr. Browne's ability to steer and reach and turn was affected by the pain in his back and wrist and that his ability to stand, walk and engage the pedals on the bus was affected by the pain in his back and right knee. Likewise, the only reasonable inference to be drawn from the doctors' opinions that Mr. Browne was unfit for duty is that the pain he experienced prevented his use of the parts of his body that were required to do his job. This court agrees, then, with the conclusions of the CRB that the final decision of the ALJ to deny compensation does not follow rationally from the factual findings that are supported by substantial evidence.
To the extent that proof of disability requires proof that the claimant lost wages as a result of his injuries, the only rational conclusion that derives from the findings made by the ALJ is that this claimant did. There was no evidence to support a finding that Mr. Browne voluntarily chose not to go to work when he was otherwise capable of doing so. Given the credibility determinations and the factual findings made by the ALJ, the only rational conclusion is that when Mr. Browne lost wages after the work-related accident, it was because he was in too much pain to work. WMATA presented no evidence to prove otherwise, other than the findings of its IME, which were rejected. Indeed, even when Browne did return to work, it was against medical advice and, according to his doctors, perhaps for financial reasons. The fact that Mr. Browne "successfully" returned to work does not undermine the analysis since the ALJ found that Browne remained in pain even to the date of the hearing. Thus, his return to work was successful in that he was able to drive a bus, but it is unclear to what extent his continued pain interfered with or was aggravated by his job performance.
Upon review of the record in this case, therefore, we hold that the decision of the CRB finding substantial evidence to support the factual findings of the ALJ is correct. Likewise correct is the conclusion of the CRB that the final conclusions of the ALJ did not flow rationally from the findings of facts that he made. To the extent that the ALJ reached a result that did not flow rationally from his factual findings, it was proper for the CRB to reverse the ALJ's decision. Under these circumstances, however, the CRB was constrained to remand the matter to the ALJ with instructions to enter an order consistent with its opinion. What the Board could not do was issue an award of compensation.
Accordingly, for the foregoing reasons, we reverse the Director's decision and remand the case to the agency for further proceedings consistent with this opinion, including a further remand to the ALJ *151 with instructions to award disability compensation for the two claimed periods
So ordered.
NOTES
[*] Sitting by designation pursuant to D.C.Code § 11-707(a) (2001).
[1] In a similar accident four years earlier, Mr. Browne injured his right leg and lower back. However, by the time of this second accident, Mr. Browne was no longer suffering any of the effects of the earlier injuries.
[2] The record is unclear when Mr. Browne first saw the doctor at Kaiser Permanente. Curiously, neither party submitted medical records for this treatment. The record is therefore silent as to what, if any, diagnosis was made by the treating doctor at Kaiser and what, if any, recommendation was made for further treatment.
[3] The ALJ found that Mr. Browne went to see the doctors at Phillips and Green "on the advice of counsel." There is nothing in the record that supports this finding.
[4] There was evidence presented by WMATA that Mr. Browne missed several appointments during the course of his PT treatment. The ALJ found that "Claimant missed some physical therapy sessions due to child care responsibilities and rescheduled those missed sessions." These findings seem to have had no bearing on the ALJ's final order.
[5] The ALJ recognized two rebuttable presumptions in the law. The first is the presumption that an injury arose during the course of employment and is therefore compensable if the employee produces credible evidence of the injury and a work-related event that has the potential for causing injury. There was no dispute by the parties concerning the work-relatedness of the accident that resulted in Mr. Browne's injuries. The ALJ also recognized a second presumption of compensability when the employee produces credible evidence that a resulting disabling condition, in this case, Mr. Browne's persistent right knee pain, derived from the work-related injury. Again, there seemed to be no dispute by the parties that Mr. Browne's current right knee pain stemmed from the work-related injury.
[6] More properly, he took administrative notice of these facts.
[7] It is not at all clear why the ALJ referenced Mr. Browne's capacity to function at home. Although incapacity at home might inform the analysis of an employee's incapacity at work, the only issue in a worker's compensation case is an employee's disability as it relates to work functions. Moreover, it is conceivable that an employee could sustain an injury that did not incapacitate him or her at home, while preventing him or her from performing work functions. For example, if a bus driver with an injured knee was required to exert more pressure to depress the brake or accelerator pedal on a bus than is required for an automobile, he might be able to drive a car at home while being disabled from working as a bus driver.
[8] Curiously, the ALJ concluded not only that the claimant's evidence was insufficient, but he went further and found "Claimant was not temporar[ily] totally disabled for [either claim] period. . . ."
[9] For example, the CRB noted that the ALJ could have denied Mr. Browne's claims based upon the opinions of WMATA's independent medical examiner, Dr. Robert Gordon. The CRB also noted that a decision by the ALJ to credit Dr. Gordon's findings would have been corroborated by the fact that Mr. Browne returned to work successfully, despite his treating physician's continuing opinion that he was unfit for duty as a bus driver. Obviously, the ALJ could also have decided that Mr. Browne was not credible in his claim that he was in too much pain to operate a bus.
[10] The term "amend" as used in this statutory provision allows for an alteration, revision, or correction in phraseology of the decision by the ALJ, without a change in the substance or the essence of the decision. The CRB is restricted to affirming a compensation order, reversing it, amending the order, or remanding the matter to the issuing ALJ for further action.
[11] Indeed, as was the case in Whittaker, supra, and Baker, supra, it does not appear that the employer's offer of proof at the hearing in this case was aimed at rebutting the presumption of work-relatedness. Instead, it appears that WMATA focused its proof only on the question of the extent and duration of Mr. Browne's disability.
[12] For purposes of the worker's compensation statute, disability is not defined medically as it is, for example, in a personal injury matter. Rather, it is defined statutorily as an economic concept. Any incapacity arising from a work-related injury that results in lost wages is a disability. Mills, supra.
[13] "According to the customary formulas, a party who has the burden of persuasion of a fact must prove it . . . [in] the general run of issues in civil cases `by a preponderance of evidence.'" (Citation omitted). KENNETH S. BROUN, ET AL., McCORMICK ON EVIDENCE, BURDEN OF PROOF AND PRESUMPTIONS § 339 (3d ed.1984).
[14] The ALJ found that: (1) Mr. Browne was in pain from the date of the accident through the date of the worker's compensation hearing; (2) Mr. Browne treated himself initially with heat wraps and pain medication, but when this was unsuccessful, he sought treatment with orthopedists; (3) The objective medical findings of the treating doctors were consistent with Mr. Browne's subjective complaints of pain; and (4) The consistent opinions of the treating physicians were that Mr. Browne was unable to perform his job duties due to his injuries; (5) The treating physicians expressed the view that Mr. Browne returned to work against medical advice for financial reasons.