*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-AA-714

HUGHEY PAYNE, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, INTERVENOR.

On Petition for Review of Decision and Order of the District of Columbia Department of Employment Services, Compensation Review Board
(CRB-096-11)

(Argued February 27, 2014     Decided September 18, 2014)

*Marc Fiedler* for petitioner.

*Mark H. Dho*, Associate General Counsel, with whom *Kathryn H.S. Pett*, General Counsel, and *Mark F. Sullivan*, Deputy General Counsel, were on the brief, for intervenor.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Gregory M. Cumming*, Assistant Attorney General, filed a statement in lieu of brief for respondent.

Before WASHINGTON, *Chief Judge*, GLICKMAN, *Associate Judge*, and EDELMAN, *Associate Judge, Superior Court of the District of Columbia.**

---

* Judge Edelman is sitting by designation pursuant to D.C. Code § 11-707 (a) (2001).

EDELMAN, *Associate Judge*, *Superior Court of the District of Columbia*: Petitioner Hughey Payne ("Payne") requests review of a May 2, 2012, Decision and Order of the Compensation Review Board ("the Board") (CRB No. 11-096) that affirmed a Compensation Order on Remand, issued August 18, 2011, by a Department of Employment Services Administrative Law Judge ("ALJ"), awarding Payne temporary total disability benefits for the period from August 29, 2006, to September 11, 2006. Payne seeks an award of such benefits from August 29, 2006, through July 22, 2012, when Payne returned to work. Because the Board erred by exceeding its authority on review when it substituted its view of the facts for the findings of the ALJ and misapprehended the basis for the ALJ's legal conclusions, we reverse the Board's decision.

## I.    Background

This case has travelled a long and tortured procedural path, and is new for neither the Department of Employment Services nor this court. Payne, a Metrorail station manager for the Washington Metropolitan Area Transit Authority ("WMATA"), did not return to work after August 29, 2006, due to heightened asthma and respiratory problems he was experiencing. He thereafter filed a claim under the District of Columbia Workers' Compensation Act, D.C. Code §§ 32-1501 − 1535 (2012 Repl.), alleging that he had suffered an accidental workplace injury or developed an occupational disease at his workplace and seeking

temporary total disability benefits from August 29, 2006, to the "present and continuing, causally related medical expenses, and interest." After an evidentiary hearing, in a Compensation Order dated October 31, 2007, the ALJ found that "Payne's exposure to dust and excessive heat while working as a station manager [for WMATA] aggravated [Payne's] asthma." The ALJ concluded that Payne was rendered temporarily totally disabled from August 29, 2006, when the Metro station's air conditioning malfunctioned, exposing him to high temperatures that triggered difficulty breathing and exacerbated other symptoms, and forced Payne to leave work. The Compensation Order accordingly awarded Payne workers' compensation benefits beginning from that date.

On January 28, 2008, the Board reviewed and affirmed the finding that Payne was temporarily totally disabled from August 29, 2006, but remanded the matter to the ALJ to allow testimony from one of WMATA's witnesses regarding "the current condition of the air quality at the stations in light of the opinions of [two doctors] that Respondent can return to work but should avoid dusty areas and extreme temperatures." The Board noted that while this evidence "may not be relative to the causal connection issue [of whether the workplace conditions caused Payne's respiratory condition] as it is after the fact, it is relative to the present nature and extent of [Payne's] disability, if any," *i.e.*, to whether the conditions at any Metro stations permitted Payne to work there in spite of his workplace injury.

On remand, the ALJ heard testimony from Dr. Neil Jurinski, a certified industrial hygienist, who prepared a report on dust levels in WMATA's underground stations. The ALJ did not alter his ultimate conclusions after considering Dr. Jurinski's opinion, noting that air samples were not collected during the summer months, and that Dr. Jurinski's analysis was limited only to dust levels and "did not consider other possible environmental factors that could impact [Payne's] employment [including temperature]." In an April 30, 2008, Compensation Order on Remand, after finding that WMATA did not offer Payne employment consistent with his medical restrictions, the ALJ again concluded that Payne "established entitlement to temporary total disability benefits . . . from August 29, 2006 to the present and continuing." The Board affirmed the finding of ongoing disability on September 3, 2008, and WMATA petitioned to this court for review.

On August 15, 2010, this court affirmed the Board's decision to uphold the ALJ's determination that Payne sustained a compensable workplace injury, but reversed "the portion of the Board's decision upholding the ALJ's determination that Payne has an ongoing disability." *See Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs. (Payne I)*, 992 A.2d 1276, 1277-78 (D.C. 2010). On the latter point, we explained, "the ALJ erroneously stated that Payne's burden was only to 'present substantial credible evidence that he has a disability entitling him to the requested level of benefits' . . . . [when] [i]n fact, 'the

correct burden of proof is a preponderance of the evidence.'" *Id.* at 1282 (citing *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 926 A.2d 140, 149 (D.C. 2007)). As a consequence, "[h]aving misapprehended Payne's burden of proof, the ALJ made no finding as to whether Payne proved by a preponderance of the evidence that his disability was ongoing." *Id.* "Notwithstanding, if the Board had concluded as a matter of law that the evidence was so one-sided that it would have been unreasonable for the ALJ to find that Payne had failed to prove his ongoing disability by a preponderance of the evidence, the Board could properly have upheld the ALJ's determination. But the Board never made such a legal determination." *Id.* Determining whether Payne's disability was "ongoing" required addressing whether Payne could return to work for WMATA, *i.e.*, whether dust and temperature conditions in the workplace precluded him from returning to work in Metro tunnels. This court noted that it could have answered this question and "avoid[ed] a remand if [it] were able to make a legal determination that the evidence compelled a determination that Payne met (or failed to meet) his burden of proof as to his claim that workplace conditions [including dust levels and temperature extremes] prevent[ed] him from returning to work." *Payne I*, 992 A.2d at 1283 (concluding that evidence "as to both the evidence about 'dust' and the evidence about temperature extremes . . . [did] not so clearly favor either side that [this court] [could] make such a

determination").

Before remanding to the administrative agency for further findings of fact on the question of "ongoing disability," this court summarized the evidence in the record to guide the ALJ on remand. *Id*. at 1285-86. When discussing "the ['conflict[ing]'] evidence . . . regarding whether the workplace would continue to expose Payne to excessive heat (or cold)[,]" this court addressed the ultimate origination of Payne's respiratory condition, not to raise a fundamental analytical question underlying Payne's entire claim of ongoing disability, but to evaluate a very specific evidentiary argument made by WMATA. WMATA had argued that the evidence demonstrating that Payne experienced respiratory difficulties in extreme temperatures, both outside the workplace and after he left WMATA, suggested that the temperature in the workplace did not prevent him from returning to work. *Id.* at 1285. This court delineated the record evidence that revealed Payne continued to experience symptoms from and difficulty withstanding temperature extremes, and acknowledged that he experienced symptoms "even outside the workplace." *Id.* In commenting on the potential significance of this evidence, this court opined that despite the employer's reliance on it, such evidence "would not necessarily favor WMATA if Payne's sensitivity to temperature extremes had developed *ab initio* in the workplace[.]" *Id.* However, because the ALJ "made no finding that Payne's pulmonary condition was caused

*ab initio* by his employment, or that the condition was worsened as a permanent medical matter (*i.e.*, rendered worse in the sense that exposure causing the disability made Payne more susceptible as a general matter to such exposures than he had previously, or that the workplace exposure heightened [Payne's] preexisting sensitivity to exposure to dust or heat)[,]" this court could not evaluate which side's argument this evidence assisted. *Id.* at 1285-86. To further guide the ALJ on remand, this court explicated how the holding in *Howard Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 881 A.2d 567, 573 (D.C. 2005)—cited by the ALJ in the April 2008 Compensation Order—is inapplicable *unless* the ALJ "find[s] that conditions in the workplace were the cause or permanently worsened Payne's asthma or rendered him more susceptible to irritants. . . ." *Payne I*, 992 A.2d at 1286 n.12. Finally, this court emphasized, "it [is] the role of the ALJ to be the sole judge of where the preponderance of the evidence lay, *i.e.*, to weigh that evidence that we have summarized and other evidence in the record and to determine whether or not the preponderance of the evidence supported a finding of ongoing disability." *Id.* at 1286.

On remand from the Court of Appeals, the ALJ made further findings of fact and issued the first Compensation Order on Remand on December 10, 2010, ("December 2010 Compensation Order on Remand"), again awarding Payne ongoing temporary total disability benefits. Given that the remand from this court

focused only on "the issue of ongoing disability," *id.* at 1287, the ALJ correctly characterized the issue before him as solely "the nature and extent of [Payne's] disability, if any" and made additional findings of fact related to workplace dust and temperature conditions, medical evidence related to the onset, progression, and diagnoses of Payne's symptoms, and Payne's (then) present ability to return to work. In doing so, the ALJ made two findings key to the resolution of the present appeal:

> (1) "The record reveals the August 29, 2006 incident was not an isolated incident but a culmination of continuing factors which rendered Claimant unable to work[,]" and
>
> (2) While "no physician has stated the work exposure caused a permanent aggravation of Claimant's condition," the evidence in the record "reveals repeated workplace exposures have rendered Claimant symptomatic or unable to work."

These findings answer both the general and specific questions teed up by this court in *Payne I*: namely, whether Payne's disability is ongoing and whether the evidence of Payne's present symptoms experienced after exposure to dust and/or temperature extremes, both during and after employment at WMATA, favor or undermine his claim for ongoing disability. As this court charged him to do, the ALJ "weigh[ed] the evidence . . . and determine[d] . . . the preponderance of the evidence support[s] a finding of ongoing disability." *See Payne I*, 992 A.2d at 1286. The ALJ found that "the preponderance of the evidence establishes

Claimant has an ongoing disability as a result of Claimant's exposure to dust, excessive temperatures and other irritants found in the workplace." Because the ALJ found that Payne's condition, regardless of origination, was permanently worsened by multiple workplace exposures—*i.e.*, that workplace exposure to dust and temperature extremes "rendered [Payne] more susceptible as a general matter to such exposures than he had [been] previously, or that the workplace exposure heightened [Payne's] preexisting sensitivity to exposure to dust or heat," *see Payne I*, 992 A.2d at 1285—the ALJ weighed the evidence of Payne's continuing symptoms outside of the workplace in his favor, and found that he proved by a preponderance of the evidence that his disability is ongoing.

WMATA once again appealed to the Board. Despite the fact that neither the ALJ, the Board, nor this court had ever found that Payne's asthma preexisted his employment at WMATA, and despite the ALJ's findings ascribing his condition to "a culmination of continuing factors" and "repeated workplace exposures," the Board began the analysis in its August 4, 2011, decision by characterizing this case as one in which a single workplace incident had inflamed a preexisting medical condition:

> Where, as here, a claimant has a pre-existing condition that is exacerbated by a single, workplace event, a claimant is disabled only so long as the disabling symptoms appear, unless the workplace exposure aggravates and makes more sensitive the

> pre-existing condition, preventing a claimant from returning to the prior pre-exacerbation condition.

*Hughey Payne v. Washington Transit Auth.*, CRB No. 11-002 (D.C. Department of Employment Services 2011). The Board remanded the case to the ALJ to make new legal conclusions, based on the Board's belief that "because the claimant's pre-existing condition was aggravated by a single workplace exposure, the claimant is entitled to disability benefits only for the duration of that acute episode unless the workplace exposure caused a permanent worsening of the preexisting condition."

The case returned to the ALJ once again, and the ALJ issued a Second Compensation Order on Remand on August 18, 2011 ("August 2011 Compensation Order on Remand"), accepting the Board's framing of the issues and limiting the disability award to the period between August 29, 2006, and September 11, 2006. On remand, as charged by the Board, the ALJ cited "[t]he law relating to [an employer's liability for] pre-existing diseases that are temporarily exacerbated by the workplace. . . ." In the August 2011 Compensation Order on Remand, the ALJ abandoned the previous factual findings that Payne's injury resulted from a culmination of repeated exposures; found that Payne's condition pre-existed employment with WMATA despite having previously never made such a finding, and despite having previously described Payne's

development of symptoms of respiratory illness as having arisen only after he began working at WMATA; and summarized evidence supporting the prior finding that Payne continues to suffer from these symptoms, yet held there were no longer "residuals" from the injury. The ALJ concluded that Payne "failed to establish the work incident caused or permanently aggravated the underlying preexisting condition as required by established precedent." The Board affirmed this determination on May 2, 2012. Payne timely petitioned this court for review.

## II. Standard of Review

This court reviews agency decisions in workers' compensation cases pursuant to the D.C. Administrative Procedures Act, D.C. Code §§ 2-501 *et seq. See* D.C. Code § 32-1522 (b)(3) (2012 Repl.). This court reviews decisions of the Department of Employment Services ("DOES") "to determine whether they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 971 A.2d 909, 915 (D.C. 2009). In doing so, we ask "whether the agency made a finding of fact on each material contested issue of fact; . . . whether the agency's findings are supported by substantial evidence on the record as a whole; and . . . whether the Board's conclusions flow rationally from those findings and comport with applicable law." *Washington Metro. Area Transit Auth.*, 926 A.2d at 150 (quoting *Mills v. District of Columbia Dep't of Emp't Servs.*, 838 A.2d 325, 328 (D.C.

2003)) (citing *Ferreira v. District of Columbia Dep't of Emp't Servs.*, 667 A.2d 310, 312 (D.C. 1995)). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Marriott at Wardman Park v. District of Columbia Dep't of Emp't Servs.*, 85 A.3d 1272, 1276 (D.C. 2014) (internal quotations omitted). In addition, "[c]redibility determinations of an ALJ are accorded special deference by this court." *Id.*

This court's "standard of review mirrors that which the Board is bound to apply" when the Board reviews an ALJ's compensation order. *Id.* at 1276 (citing *Marriott Int'l v. District of Columbia Dep't of Emp't Servs.*, 834 A.2d 882, 885-86 (D.C. 2003)). Neither the Court of Appeals, when reviewing an Order of the Board, nor the Board, when reviewing an ALJ's Compensation Order, may "consider the evidence *de novo* or . . . make factual findings different than those of the ALJ." *Id.* This deferential review binds the Board to the "ALJ's findings of fact even if [the Board] might have reached a contrary result based on an independent review of the record." *Id.* And the Board remains so bound even if the record contains substantial evidence contrary to the ALJ's factual findings. *Marriott Int'l*, 834 A.2d at 885. The Board's limited scope of review does not permit it to "substitute its judgment for that of the ALJ." *Bentt v. District of Columbia Dep't of Emp't Servs.* (*Bentt II*), 979 A.2d 1226,1231 (D.C. 2009) (citing *Marriott Int'l*, 834 A.2d at 885). In addition to its review of the ALJ's

factual findings, the Board reviews the ALJ's legal conclusions for legal sufficiency, and will overturn a compensation order that is not in accordance with the law. D.C. Code § 32-1521.01 (d)(1)-(2). Likewise, the Court of Appeals "will reverse the [Board's] decision if it is not in accordance with the law." *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 985 A.2d 431, 433 (D.C. 2009).

On remand, therefore, it was Payne's "obligation to provide evidence that the wage loss he suffered [since he left work on August 29, 2006] was [and continued to be] caused by the injury he suffered at work." *See Hiligh v. District of Columbia Dep't of Emp't Servs.*, 935 A.2d 1070 (D.C. 2007) (citing *Landesberg v. District of Columbia Dep't of Emp't Servs.*, 794 A.2d 607, 612 (D.C. 2002), *reversed on other grounds by McCamey v. District of Columbia Dep't of Emp't Servs.*, 947 A.2d 1191 (D.C. 2008) ("The Act . . . does not afford the claimant a presumption regarding the nature and extent of his or her disability.")). On the first remand from this court, the ALJ was tasked with weighing the evidence presented by Payne to determine whether he met the requisite burden by producing a preponderance of the evidence in support of the conclusion that his disability was ongoing. *See id.*

### III.    Analysis

As set forth *supra*, the Board's review of an ALJ's decision is limited to determining whether the factual findings of the ALJ are based on substantial evidence in the record, and whether the ALJ's legal conclusions drawn from those facts are in accordance with applicable law.  *See* D.C. Workers' Compensation Act of 1979, as amended, D.C. Code §§ 32-1501 to -1545 at § 1521.01 (d)(2)(A) (2012 Repl.).  In this case, the Board's Decision and Order vacating the ALJ's December 2010 Compensation Order on Remand exceeded the scope of its authority, as it made factual findings contrary to findings of the ALJ that were supported by substantial evidence.  Moreover, in setting aside the ALJ's award, the Board misapprehended and overlooked the legal conclusions that flowed rationally from the ALJ's factual findings.  For both reasons, the Board erred, and the subsequent May 2, 2012, Decision and Order of the Compensation Review Board, affirming the August 2011 Compensation Order on Remand, must be reversed.

### A. The Board's Error in Review of Factual Findings

Even though the Board correctly stated that it "must uphold a Compensation Order that is supported by substantial evidence, even if there is also contained within the record under review substantial evidence to support a contrary conclusion," it ignored this deferential standard of review by making two factual

findings in contravention of findings made by the ALJ. First, the Board (i) announced that Payne's condition was "exacerbated by a single, workplace event[,]" and later, the Board (ii) concluded that Payne's condition "pre-exist[ed]" his employment at WMATA. As to the Board's first finding, the ALJ's December 2010 Compensation Order on Remand contained a finding expressly contrary to it, and it was supported by substantial evidence in the record. As to the Board's second finding, while the ALJ did not make a finding expressly contrary to it, such a finding was not necessary to resolve the issue before the ALJ on remand.[1] Ultimately, because the Board made its own findings, rather than reviewed the ALJ's factual findings, the Board erred.

The Board's first "finding"—that Payne's workplace injury was "exacerbated by a single, workplace event"—runs directly counter to an explicit

---

[1] While the Board described Payne's condition as "pre-existing" without qualifying whether it meant his condition preexisted employment at WMATA or preexisted the final work incident in August 2006, the Board's directions to the ALJ in its August 2011 decision made clear that it considered Payne's condition as one that preexisted his employment at WMATA. The Board believed that "because [Payne's] pre-existing condition was aggravated by a single workplace exposure, [he] is entitled to benefits if the symptoms from the acute episode have not ended but is not entitled to benefits if they did, absent the additional finding that the acute episode permanently worsened the claimant's preexisting condition." That analysis applies only in cases where a claimant has a preexisting allergic condition that was triggered, but perhaps worsened, by a workplace event. *See, e.g.*, *Washington Post v. District of Columbia Dep't of Emp't Servs.*, 853 A.2d 704, 708 n.3 (D.C. 2004). As discussed *infra*, however, this is not the only possible basis for benefit entitlements nor the basis found by the ALJ in this case.

finding of the ALJ in the December 2010 Compensation Order on Remand. The ALJ found that "the record reveals the August 29, 2006 incident was not an isolated incident but a culmination of continuing factors which rendered Claimant unable to work." Even if it would have come to a contrary conclusion, the Board was limited to reviewing the ALJ's factual finding only to assess whether it was supported by substantial evidence in the record. And here, substantial evidence surely supports the ALJ's finding that Payne's condition resulted from a series of exposures throughout his employment at WMATA. The ALJ credited Payne's testimony regarding his health problems and respiratory symptoms during and after his employment at WMATA. Payne testified that he experienced respiratory symptoms related to temperature exposure at his WMATA work sites as early as 2000 or 2001; he described multiple instances related to temperature and dust before the August 29, 2006, event during which his condition flared up and/or required that he leave work.[2] The medical evidence also provides support for the

---

[2] Payne testified that an early incident occurred in 2000 or 2001 when an air conditioner broke on the Metrobus he was operating. He testified he experienced sinus discharge and difficulty breathing. A second, similar incident occurred in 2002. Payne also experienced respiratory symptoms when the bus he was operating was not properly heated. While a station manager at Foggy Bottom in 2005, Payne experienced trouble breathing and became hoarse when the air conditioner broke at the Metro station. Payne experienced respiratory problems and felt nauseated while working as a station manager in the Farragut West Metrorail station in December 2005; he believed this was due to fumes and break dust in the Metro tunnel.

ALJ's conclusion. Multiple doctors evaluated, diagnosed, and treated Payne throughout and after his employment at WMATA, including before the August 2006 incident. Payne's complaints and symptoms, as well as his treating physicians' diagnoses and instructions to control his symptoms, grew increasingly severe from the time he first reported symptoms through the date he left WMATA in 2006.[3] Considering that the ALJ credited Payne's testimony about his

---

[3] Dr. Armstrong, a pulmonary disease specialist and one of Payne's treating physicians, evaluated him multiple times. He initially diagnosed Payne with a pollen allergy on May 16, 2006, but eventually, after further evaluation and testing, diagnosed Payne with allergic asthma and rhinitis in April 2007. Dr. Armstrong then advised Payne to stay away from airborne irritants. In September 2007, Dr. Armstrong "remarked the asthma was permanent and lifelong, requiring several medications. . . ." In a medical questionnaire, Dr. Armstrong stated that Payne's conditions were "[a]llergic [a]sthma [and] [r]hinitis," and noted that the causes of these conditions were "[a]llergies to inhaled irritants [of] years duration." Dr. Armstrong also indicated in September 2007 that Payne's condition was worsened by the dust exposure at the Metro station and that he needed to relocate to a less irritating job site. In February and April 2007, Dr. Armstrong again emphasized that Payne was unable to return to his regular duties in underground Metro tunnels, and suggested he be relocated to an outdoor Metro station. Again, his diagnosis included chronic asthma and sinusitis. In September 2007, Dr. Armstrong advised Payne to stay out of Metro tunnels and avoid dusty areas and extreme temperatures (over 90 and less than 35 degrees) because these worsen his symptoms. On September 18, 2006, Dr. Damiano, a head and neck surgeon, examined Payne and found evidence of chronic sinusitis; later, on September 25, 2006, a CT scan of "the paranasal sinuses . . . revealed severe chronic left maxillary sinusitis and no acute sinusitis." He diagnosed Payne on October 19, 2006, with chronic left maxillary and ethmoid sinitus. In addition, according to Payne's testimony and the medical reports, a number of Payne's treating physicians prescribed medication to control the symptoms of his condition. During the original hearing, his attorney asked Payne whether he had to take medication to control symptoms before working at the Foggy Bottom Metro station, and Payne testified, "No. None." The

( continued…)

experiences during these multiple instances and medical evidence supported that testimony, the substantial record evidence supports the ALJ's finding in the December 2010 Compensation Order on Remand that multiple workplace exposures, not one isolated incident in August 2006, contributed to Payne's current condition.[4]

Because substantial evidence supported the ALJ's finding in the December 2010 Compensation Order on Remand that Payne's present condition resulted from multiple workplace exposures, the Board had neither the occasion nor authority to substitute its judgment for that of the ALJ and instead found that Payne's condition resulted from a "single, workplace event." *See, e.g.*, *Bentt II*, 979 A.2d at 1234

---

(…continued)
independent medical examiner, Dr. Samuel Scott, reported that Payne's symptoms began after he started working as a station manager at the Foggy Bottom Metro station, and diagnosed Payne with adult onset asthma that is exacerbated by hot and humid conditions.

[4] In the December 2010 Compensation Order on Remand, the ALJ found that Payne's symptoms "initially began in July or August 2005 when the air conditioner failed at the Foggy Bottom Station causing hoarseness and breathing problems due to excessive heat above 90 degrees" and noted that this conclusion is consistent with Dr. Scott's finding that Payne's symptoms are "exacerbated by hot, humid conditions." Further, the ALJ found that "record reveals Payne continued to have problems while working at the Farragut West Station in December 2005 . . . [where] brake dust and fumes from the trains affected his breathing." Payne sought medical treatment for his "sore throat, hoarseness and nasal discharge in March 2006." Finally, the ALJ found Payne "remained symptomatic, and stopped working on August 29, 2006" after he "became dizzy, faint and very weak when the air conditioning malfunctioned. . . ."

("We are not saying that the record precluded the ALJ from finding [what the Board found], but that is not the finding that the ALJ made. And because the ALJ's initial finding on remand was supported by substantial evidence and not foreclosed by *Bentt I*, the Board was not permitted to substitute its judgment for that of the ALJ." (internal quotations and citations omitted)).

The Board's second "finding"—that Payne's condition preexisted his employment at WMATA—similarly ignored the ALJ's well-supported findings regarding the onset of Payne's symptoms. See notes 2-4, *supra*. In addition, in making this finding, it appears the Board misapprehended the significance of portions of the 2010 decision of this court. The Board seemed misled by this court's comment that a finding on the origination of Payne's condition could make evidence of his sensitivity to temperature extremes outside of the workplace more or less supportive of his claim for ongoing disability. In addition to ascribing Payne's injury to a single workplace exposure, the Board stated, without explanation or support in the record, that Payne's condition preexisted his employment at WMATA and so implied, also without explanation, that Payne's condition was not caused by workplace exposure at WMATA.[5] However, this court discussed the origination of Payne's respiratory condition only as part of its

---

[5] See note 1, *supra*.

analysis of a relatively limited factual dispute (*i.e.*, whether Payne's reaction to temperatures outside of the workplace supported or undermined the parties' competing claims about whether the temperature conditions in Metro stations allowed his return to work), and neither made factual conclusions on these issues nor instructed the ALJ or the Board to reconsider the case in light of the case law relating to the compensability of aggravation of preexisting conditions. Indeed, to the extent it referenced these precedents, this court stated only that because the ALJ did not make a finding on whether Payne's condition, specifically his sensitivity to temperature extremes, arose *ab initio* in the workplace, his reliance on *Howard University* was "inapposite." *Payne I*, 992 A.2d at 1286 n.12. Rather, this court remanded for the ALJ to weigh the evidence of ongoing disability and noted that weighing certain evidence *may* necessitate a finding on inception of Payne's condition.

The Board's finding regarding the preexisting nature of Payne's condition thus stemmed from a failure to afford proper deference to the ALJ's fact-finding role and a misreading of this court's prior opinion. The Board's resulting conclusion that Payne's respiratory illness preexisted his employment at WMATA, and the remand to the ALJ to reconsider the entire basis of the compensation award in light of that conclusion, thus constitutes error.

## B. The Board's Error in Review of Legal Conclusions

The Board's error in reviewing the ALJ's legal conclusions relates to, and indeed stems from, the Board's inappropriate factual findings. An ongoing disability due to a workplace exposure or exposures exists when the claimant's condition either originated *ab initio* in the workplace *or* was permanently aggravated or worsened by workplace exposures, and the claimant continues to suffer a wage loss. *See, e.g.*, *Washington Post*, 853 A.2d at 707 ("When an allergy develops for the first time at the workplace, it is identical to any other work-related injury."); *see also Clark v. District of Columbia Dep't of Emp't Servs.*, 772 A.2d 198, 202 (D.C. 2001) ("It is well established that in the District of Columbia, a disability resulting from the aggravation of a pre-existing condition is compensable under the [Worker's Compensation Act] . . . .") (citation omitted); *Jackson v. District of Columbia Dep't of Emp't Servs.*, 955 A.2d 728, 734 n.7 (D.C. 2008) ("[B]ecause aggravation of a preexisting injury is compensable, it does not matter whether that preexisting injury was itself work related."). After remand from this court, the ALJ concluded that multiple workplace exposures aggravated or worsened Payne's respiratory conditions such that he remained "symptomatic and unable to work," and thus that he has an ongoing disability; the Board simply ignored this conclusion in vacating the December 2010 Compensation Order on Remand and again remanding the case to the ALJ.

Ultimately, in the December 2010 Compensation Order on Remand, the ALJ concluded that "[t]he preponderance of the evidence establishes [Payne] has an ongoing disability as a result of [Payne's] exposure to dust, excessive temperatures and other irritants found in the workplace." To reach this conclusion, the ALJ found that even though "no physician has stated the work exposure caused a permanent aggravation of [Payne's] condition, . . . the record reveals repeated workplace exposures have rendered [Payne] symptomatic or unable to work." The ALJ thus found that, despite the absence of specific medical testimony directly linking workplace exposure to dust or extreme temperature to "permanent aggravation" of Payne's condition, the record nonetheless supported Payne's contention that his respiratory condition was permanently aggravated by workplace exposures, to the extent that he still remained "symptomatic or unable to work." For example, the ALJ cited to, among other facts, Payne's continued "reactions while riding the Metro to visit his attorney and attend formal hearings." This court referenced this precise type of evidence when noting that a finding of *ab initio* causation *or* permanent worsening of the condition may be needed to determine whether this evidence supports or undermines Payne's claim for ongoing disability. *See Payne I*, 992 A.2d at 1285. The ALJ was aware of WMATA's argument that Payne's continuing symptoms outside of work imply that workplace conditions are unrelated to his present condition, and it considered and acknowledged that

"[e]mployer stated dust levels are 100 times cleaner than what OSHA allows, but Claimant remains symptomatic even though he has not worked for 1 1/2 years." The ALJ considered and rejected WMATA's interpretation of the facts and found that evidence of Payne's present, continuing symptoms *support* his claim for ongoing disability. Therefore, as required by this court on remand, the ALJ considered contested factual issues, weighed the evidence, and found evidence of continuing symptoms outside the workplace does *not* "favor WMATA," *see Payne I*, 992 A.2d at 1285, on the central remaining issue of ongoing disability.

The Board faulted the December 2010 Compensation Order on Remand because the "ALJ's thorough analysis of the evidence primarily focused on whether the claimant can return to work in an underground subway station." But this is, of course, exactly what this court tasked the ALJ with on remand. *See Payne I*, 992 A.2d at 1282-86. Answering the question whether Payne could return to work in an underground subway station resolves the issue of whether his disability is ongoing. Perhaps more importantly, the Board incorrectly believed "[t]he ALJ did not make any specific findings with respect to . . . whether [the 2006 workplace exposure] permanently worsened the claimant's pre-existing condition." Again, the ALJ expressly found that Payne's condition was permanently aggravated by multiple workplace exposures, and the record supported Payne's claim that his current wage loss resulted from his inability to

return to work in the underground stations.

The Board overlooked the ALJ's legal conclusion that workplace exposures permanently aggravated Payne's condition such that he remained unable to tolerate workplace conditions,[6] and stated it "[could] not tell if the ALJ determined the claimant's disabling symptoms have continued or if the ALJ determined the disabling symptoms from the acute episode ended but will recur if the claimant returned to work in the underground station." The Board continued, "[t]his distinction is critical because the claimant is entitled to benefits if the symptoms

---

[6] The reasoning in *Payne I* left open the possibility that the ALJ could validly conclude that environmental conditions of the Metro tunnels precluded Payne's return to work. *See Payne I*, 992 A.2d at 1285 n.10. ("At the same time, the ALJ was not bound to accept Dr. Jurinski's findings or to draw from them the inference that Dr. Scott opined would be warranted. For one thing, Dr. Jurinski acknowledged that he did not evaluate whether "something else other than dust" might have affected Payne's ability to work. *Cf. Consolidated Papers, Inc. v. Department of Indus., Labor & Human Relations*, 251 N.W.2d 69, 75 (Wis. 1977) (explaining that the fact-finder in a workmen's compensation case was not required as a matter of law to credit the findings of a study that showed that the level of a particular fungus in the paper mill where claimant worked was no higher than the level of the fungus in outside locations used for comparison, or to conclude that workplace exposure to the fungus played no role in worker's disease). Moreover, this court has cautioned against "any assumption that, because a substance present in [a work environment] may not have been at dangerous or unhealthful levels for the general public, the substance could not cause an adverse reaction in a particular claimant." *Young v. District of Columbia Dep't of Emp't Servs.*, 918 A.2d 427, 432 (D.C. 2007) (citations and internal quotation marks omitted)). In the December 2010 Compensation Order on Remand, the ALJ relied, in part, on *Young* when holding that a preponderance of the evidence supported that Payne could not return to the workplace environment of the underground stations.

from the acute episode have not ended but is not entitled to benefits if they did, absent the additional finding that the acute episode permanently worsened the claimant's preexisting condition." But since the ALJ *had* already found that multiple workplace exposures permanently aggravated Payne's condition and rendered his disability ongoing, the Board's sole role was to evaluate the legal sufficiency of those conclusions. Instead, based on the erroneously-made factual conclusion that Payne's condition "was aggravated by a single workplace exposure," the Board overlooked the ALJ's legal conclusion of permanent aggravation of the condition when it remanded the matter to the ALJ and instructed him that Payne is "entitled to disability benefits only for the duration of the acute episode unless the workplace exposure caused a permanent worsening of the pre-existing condition."

Because the ALJ concluded that multiple workplace exposures permanently aggravated Payne's condition, the Board erred by remanding to the ALJ to reconsider the case in light of the Board's reading of *Washington Post*, *Howard Univ. Hosp.*, and *Anameleche-Oladokun v. District of Columbia Public Schools*, CRB No. 09-04, No. PBL 04-002A (March 14, 2006).[7]

---

[7] In any event, these cases are either consistent with or irrelevant to the ALJ's legal conclusions regarding the permanent worsening of Payne's condition. *Washington Post* "recognize[d] that a work-related exposure could aggravate and

( continued…)

"Further proceedings after the Board's erroneous reversal of the ALJ's first Compensation Order on Remand do not alter our analysis." *Bentt II*, 979 A.2d at 1233. In the August 2011 Compensation Order on Remand, the ALJ accurately stated that the Board "remanded the case for further proceedings to determine whether the disabling symptoms from the *acute episode* ended and whether the exposure permanently worsened Claimant's pre-existing condition." (emphasis added). After providing abbreviated findings of fact, the ALJ completely retreated from many of the findings made in his December 2010 Compensation Order on Remand and stated, "Claimant does not have residuals with respect to the August 29, 2006, work incident, and the work incident did not permanently aggravate

_____

(…continued)

therefore make more sensitive a pre-existing allergy, possibly preventing a claimant from returning to her prior condition." *Washington Post*, 853 A.2d at 708 n.3. Therefore, contrary to WMATA's arguments, the ALJ never had to find that Payne's condition was caused originally in the workplace to award ongoing disability. "Permanent aggravation" from workplace exposure (as found by the ALJ here) does not preclude Payne from ongoing compensation, regardless of his condition's origination. *See id.* Similarly, nothing in *Howard University*'s holding contravenes the ALJ's legal conclusion that permanent aggravation of Payne's condition renders him unable to return to work. *See Howard Univ. Hosp.*, 881 A.2d at 573. Finally, the holding in *Anameleche-Oladokun* begins with "[w]here the condition was pre-existent *and was not made worse as a baseline condition by the work place exposure. . . .*" (emphasis added). Here, the ALJ concluded that workplace exposure "permanently aggravated" Payne's condition and that he continues to suffer "residuals related to the work incident." Therefore, even if Payne's condition preexisted employment at WMATA, the ALJ's conclusion that workplace exposures "permanently aggravated" his condition separates this case from *Anameleche-Oladokun*.

Claimant's underlying preexisting asthmatic condition."[8]   In the August 2011 Compensation Order on Remand, the ALJ, focusing exclusively on the August 29, 2006, incident and likely feeling constrained by the framing of the issues in the Board's remand order, cited the law "related to pre-existing diseases that are temporarily exacerbated by the workplace" and altered how he viewed the same previously-reviewed evidence.  In the end, the ALJ summarized the evidence that "clearly establishe[d] [Payne's] asthmatic condition pre-existed the incident of August 29, 2006" but weighed this against Payne by finding that because his symptoms preexisted August 29, 2006, "the work environment did not cause [Payne's] asthma."[9]   The August 2011 Compensation Order on Remand thus incorporated, and in some ways compounded, the errors that the Board made in reviewing the December 2010 Compensation Order on Remand, and the

---

[8]     In contrast, in the December 2010 Compensation Order on Remand, the ALJ found that Payne's symptoms improved in late August 2006, but that he "continued to complain of headache, a sore throat and chest tightness"; that in October 2006, claimant "was awakened by short windedness and excessive perspiration every night"; that Payne "indicated he has flare-ups on Metro when visiting his attorney and attending formal hearings."  Indeed, the ALJ explicitly concluded that "[t]he medical evidence from Dr. Armstrong and Dr. Scott [whom the ALJ credited] establishes Claimant has residuals related to the work incident."

[9]     On appeal to the Board, Payne pointed out these inconsistencies and argued that the revised legal conclusions ignored that Payne may suffer an ongoing disability based on permanent aggravation of a condition, but the Board found no error, spending a great majority of the Order defending its prior decision reversing the December 2010 Compensation Order on Remand.

conclusions made in the latter Order do not alter the Court's analysis.

## IV. Conclusion

The Board exceeded its scope of review by reversing the ALJ's December 2010 Compensation Order on Remand after making impermissible factual findings, announcing incorrect legal standards based on a misunderstanding of *Payne I*, and erroneously reviewing the ALJ's legal conclusions. *See Marriott Int'l*, 834 A.2d at 887. In so doing, the Board erred as a matter of law. The administrative proceedings that followed the Board's erroneous decision to vacate the December 2010 Compensation Order on Remand and to remand the case again do not alter the need for reversal because of legal error.

Further factual findings are unnecessary because the December 2010 Compensation Order on Remand correctly addressed the issues on remand from the Court of Appeals, substantial evidence supported the ALJ's findings, and the ALJ's conclusions of law flowed rationally from those findings. Therefore, the Board's May 2, 2012, Order affirming—but not meaningfully reviewing— the August 2011 Compensation Order on Remand is reversed, and the December 2010 Compensation Order on Remand granting ongoing disability benefits from August 29, 2006, must be reinstated. The award should be limited, however, to the period ending July 22, 2012, the date on which Payne returned to work.

Accordingly, we reverse the Board's May 2, 2012, decision and remand the case to the Board with instructions to remand the case to the ALJ with further instructions to reinstate the ALJ's December 2010 award of temporary total disability benefits but limit the award to the period between August 29, 2006 to July 22, 2012.

*So ordered*.